**J. H. HORNE & SONS CO., Plaintiff, Appellant,**

v.

**BATH FIBRE CO., Inc., et al., Defendants, Appellees.**

No. 5487.

United States Court of Appeals
First Circuit.

Heard Oct. 5, 1959.

Decided Nov. 27, 1959.

Gerald F. Giles and Richard E. Dill, Portsmouth, with whom Boynton, Waldron & Dill, Portsmouth, was on brief, for appellant.

Stanley M. Brown, Manchester, N. H., with whom G. Marshall Abbey and McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., were on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the District of New Hampshire denying plaintiff-appellant's motion for new trial entered January 22, 1959.

Plaintiff, a Massachusetts corporation, brought suit against Bath Fibre Co., Inc., a New Hampshire corporation, and against Paul W. Glover, a citizen of New Hampshire, and Claude H. Farr, a citizen of Vermont, individually and as co-partners, for an unpaid balance of $21,877.65 for services rendered by plaintiff to the defendants. The first count was based on quantum meruit, and the second on a specific contract. The defendants in their answer set forth a counterclaim alleging that plaintiff failed to perform its agreement to recondition certain machinery so as to put it in good operating condition and to return said machinery within a certain reasonable time, and that these failures put defendants to great expense in repairing the machinery and caused them loss of production and profits.

The following facts were disclosed by the testimony and exhibits in the record. After a fire destroyed a leatherboard producing plant in Bath, New Hampshire, defendants Glover and Farr (who were succeeded by the corporation in March, 1954) decided to repair and operate the plant. In the summer of 1953 they entered into negotiations with the plaintiff concerning reconditioning by the plaintiff of various machines and an estimated maximum price was submitted by the plaintiff. While the negotiations were still in progress, defendants shipped the machines beginning November 15, 1953 to the plaintiff in Massachusetts. A meeting was held at plaintiff's plant in Lawrence, Massachusetts on December 18, 1953 and there is conflicting testimony as to any agreement or understanding reached at that time. Plaintiff started repairs on the machines. The first wet machine repaired was returned to Bath in early November 1954 and defendants proceeded to erect it. On November 24, 1954 a conference was held in Bath to present to the defendants the total cost of the work done for them. The testimony is again conflicting as to whether this meeting ended with an agreement on the price that was due plaintiff for the work done and proposed to be done. Following the setting up and operation of the first wet machine, defendants experienced trouble in its operation. There was evidence which linked this trouble with the reconditioning work done by plaintiff. The plaintiff's efforts to remedy the trouble rendered other machines of the defendants unavailable for operation.

In support of their counterclaim the defendants put in evidence of the actual production of the machines during the time they charge that the loss of profits was incurred by reason of plaintiff's

breach, evidence of the production at that time and since of the one machine which was running properly and evidence of the production of the other two machines after another company had repaired them. All this evidence supported a conclusion that the production of all the machines would have been 160 tons of leatherboard per month if they had been in proper operating condition. This would have been an increase of 60 tons per month. From evidence of the actual sales during 1955 the average price per ton was derived. The defendant corporation's broker for that period testified that in his opinion he could have sold the 60 tons extra production each month at the average price. Defendant corporation's accountant testified as to the effect of such increased sales and production on the various items making up the profit or loss statement (e. g. labor costs, raw materials, administration expenses) and ultimately on the profit or loss for that period. His conclusion was that such increased production and sales would have lessened defendant-corporation's losses by $15,000.00.

The issues were submitted to the jury which rendered a verdict for the plaintiff for $5,990.00 based on quantum meruit. Plaintiff moved for a new trial. It was denied by the district court and plaintiff appealed therefrom.

■ Since the motion for a new trial was made after the entry of judgment on the verdict alleging errors at the trial which entered into and infected the judgment, the contentions of the appellant must be examined to see if any is well taken and, thus, makes the denial of the motion an abuse of discretion. Creedon v. Loring, 1 Cir., 1957, 249 F.2d 714. The points which plaintiff-appellant raises on this appeal as error are: first, the submission of the issue of claimed loss of profits to the jury and second, the refusal of the court to strike the opinion testimony of Joseph E. Finger.

■ As to the admissibility of the opinion evidence of Finger, the district court was governed by Rule 43(a), F.R. Civ.P., 28 U.S.C.A. This rule in part pro-

vides that the district court shall admit evidence which is admissible under the rules of evidence applied in New Hampshire. In Rau v. First Nat. Stores, 1952, 97 N.H. 490, 495, 92 A.2d 921, 924, the standard of admissibility was stated to be: "If the opinion expressed will be of aid to the jury and the witness is qualified to speak, it 'is admissible, even though it bears directly on a main issue.' "

■ Plaintiff-appellant contends that the opinion evidence was not admissible under the New Hampshire decisions since the basis for Finger's conclusions as to the sales he could have made was not in evidence. Specifically, appellant argues that the absence of records of sales not taken because of the unavailability of more leatherboard makes any opinion of the witness as to such sales inadmissible. Appellant cites Nadeau v. Stevens, 1920, 79 N.H. 502, 111 A. 749 and Parent v. Nashua Mfg. Co., 1899, 70 N.H. 199, 47 A. 261, in support of its contention. However, these cases hold that on the issue of causation of an accident, if a foundation of evidence to show the existence of certain circumstances is not present, then opinion testimony that such circumstances could have caused the accident is inadmissible. In the instant case there was evidence showing that there would have been an increase in production of 60 tons per month, therefore, there was evidence of the existence of circumstances, 60 tons per month available for sale, about which the witness might have an opinion. The test of admissibility in Nadeau and Parent is satisfied in the instant case. Those cases do not support appellant's contention that the conclusion testified to must be proved by other evidence.

■ The appellant has not submitted for our consideration the instructions to the jury. However, it was stipulated in oral argument that the issue of loss of profits was submitted to the jury. Since we have no indication in what manner or with what limitations the issue of loss of profits was submitted to the jury, we will affirm if submission was proper on any theory of the case supported by evidence.

See Inland Power & Light Co. v. Grieger, 9 Cir., 1937, 91 F.2d 811, 112 A.L.R. 1075.

■ There is conflicting evidence as to an agreement between the parties on reconditioning the machines and the price to be paid. There was evidence from which it might have been found that a contract was made in New Hampshire or in Massachusetts. In either case since performance was to be in Massachusetts, the New Hampshire rule as to conflict of laws requires us to turn to the law of Massachusetts to determine what rights the defendants would have upon breach of the contract. Jordan v. Fitz, 1884, 63 N.H. 227 and cases there cited.

■ Turning to the Massachusetts law on recovery of loss of profits consequent on breach of contract, we find the rule is: "When a claim for prospective profits is brought * * *, recovery can be had where loss of profits is the proximate result of the breach, and is such as in the common course of events reasonably might have been expected, at the time the contract was made, to ensue from a breach, and *where it can be determined as a practical matter with a fair degree of certainty what the profits would have been.*" John Hetherington & Sons v. William Firth Co., 1911, 210 Mass. 8, 21, 95 N.E. 961, 964. (emphasis added) A frequently cited case on this point requires that loss of profits "be susceptible of proof by evidence reasonably certain, and not resting chiefly on speculation, conjecture or surmise." Randall v. Peerless Motor Car Co., 1912, 212 Mass. 352, 380, 99 N.E. 221, 229.

■ In the instant case there was evidence of the actual sales of the defendant corporation for 1955, of the production in 1955 and 1956, of the average price of leatherboard during 1955, and testimony that additional quantities of leatherboard could have been sold, as well as a careful review of the effect of such sales on defendant corporation's profit or loss status. Measuring this evidence by the Massachusetts' standard for recovery of lost profits, we are of the opinion that the issue of loss of profits was properly submitted to the jury for its consideration. The evidence of the defendants' loss of prospective profits, cannot be said as a matter of law to have been "so remote, speculative, uncertain, or contingent as not to afford basis for a reasonable judgment." Galvin v. Nutting-Pillman Amusement Co., 1933, 284 Mass. 314, 187 N.E. 360. See also Orbach v. Paramount Pictures Corporation, 1919, 233 Mass. 281, 123 N.E. 669.

Since the submission to the jury of the question of loss of profits was proper in connection with the evidence of either alleged contract, it is not necessary for us to examine the propriety of such submission on the quantum meruit count.

Judgment will be entered affirming the order of the district court.