Rockingham,
No. 6042.

ADRIANUS VAN HOOIJDONK

*v.*

KENNETH W. LANGLEY.

February 26, 1971.

*Shaw & Eldredge, Flynn, Powell & McGuirk,* and *Charles F. Dalton, Jr.* ( *Mr. Dalton* orally ), for the plaintiff.

*Boynton, Waldron & Dill* ( *Mr. Jeremy R. Waldron* orally ), for the defendant.

DUNCAN, J. This is an action by a lessee against his lessor, alleging eviction before the end of the term, and seeking damages by reason thereof. There was a trial by jury and a verdict for the plaintiff was returned in the sum of $12,500. The questions of law presented by the defendant's exceptions were reserved and transferred by the Presiding Justice ( *Morris,* J. ).

The leased premises consisted of an A-frame building in Hampton, adjoining the Spindrift Motel. The plaintiff, who operated a restaurant in Exeter in the winter months, leased the Hampton building, to be known as The Galley, for the pur-

pose of operating a seasonal restaurant solely for the accommodation of guests of the motel.

The lease executed under date of June 12, 1961 was for a term of one year from June 15, 1961, with an option to renew for four additional years at a somewhat higher rental. It was executed by the defendant in his individual capacity, as lessor, and contained a covenant for quiet enjoyment.

At pretrial, the parties stipulated that the leased premises belonged to a corporation, Spindrift, Inc., of which the defendant was president and a substantial stockholder. Under date of December 19, 1961 the plaintiff was notified by counsel for Spindrift, Inc. as owner to remove his equipment and possessions from the leased premises by December 27, 1961, under penalty of "formal action." The plaintiff vacated the premises at some time after December 19, 1961, and before the end of the term.

While the parties have argued the question of whether an issue of "constructive eviction" is presented, it seems plain that the case is one of eviction by paramount title, which did not require that the plaintiff show eviction by judgment, but permitted him to vacate the premises, as he did, without awaiting dispossession by legal process. *Loomis* v. *Bedel,* 11 N.H. 74 ( 1840 ); *Mussey* v. *Holt,* 24 N.H. 248, 255 ( 1851 ); *Drew* v. *Towle,* 30 N.H. 531, 537 ( 1855 ). *See also Russell* v. *Fabyan,* 27 N.H. 529, 535 ( 1853 ); 1 Tiffany, Real Property *s.* 139 ( 3d ed. 1939 ); Annot., 172 A.L.R. 18 ( 1948 ).

In preparing the leased building for use as a restaurant, the plaintiff expended more than $2,000 for equipment, furnishings and interior finish, from which he realized only a few hundred dollars upon their removal when he was evicted. In addition, he presented a claim for lost profits over a period of four years. While the defendant objected that the plaintiff never gave notice of his intention to exercise his option for an additional four year term, the agreement specified no time when such a notice should be given. In view of the seasonal nature of the operation, it cannot be said that the plaintiff forfeited his right to renewal by failing to give notice within the first six months of the original term. Thereafter the notice to quit served upon the plaintiff made it obvious that notice of an election to extend the lease would serve no useful purpose.

The vital issue presented is the defendant's argument that the

issue of loss of profits should not have been submitted to the jury. The plaintiff undertook to show through an expert witness that the business would have produced substantial profit over the period of a four year extension, although only nominal gain was realized for the two months of operation in 1961. The witness in question operated a public restaurant situated at Hampton Beach a short distance from the Galley, and could properly be found qualified to testify concerning the operation of a restaurant in that locality. He was likewise familiar with the leased premises, although he had no contact with the plaintiff's operations after they first commenced.

Subject to the defendant's exception, the witness was permitted to testify that if the motel were occupied to capacity, he would expect the restaurant to earn by the fifth year "between six and eight thousand dollars net." On cross-examination he testified that this was based upon a "gross . . . [for] these eight tables for one season of $23,000 to $26,000." The defendant's evidence was that in the years 1968 and 1969, the operation of the Galley under the management of new owner of the motel produced a gross income of $4592 in 1968, and $5164 in 1969.

The real issue with respect to the testimony of the witness was not whether he was qualified as an expert, but whether there was sufficient relevant data so that his opinion as to future profits could serve to aid in resolving uncertainties. McCormick, Damages s. 29 ( 1935 ); 11 Williston, Contracts s. 1346-A, at 250 ( 3d ed. W.H.E. Jaeger 1968 ).

Any undertaking to establish the amount of future gains prevented is likely to encounter difficulty in satisfying the requirement of reasonable certainty of proof. Restatement of Contracts, s. 331 and Comments ( 1932 ); Salinger v. Salinger, 69 N.H. 589, 591, 45 A. 558, 559 ( 1899 ). An established business can usually provide data from which future prospects can reasonably be projected. Buck v. Mueller, 221 Or. 271, 351 P.2d 61 ( 1960 ). Where operations have never commenced, evidence of expected profits has generally been considered incompetent because speculative. 22 Am. Jur. 2d Damages s. 173 ( 1965 ). In this case, there was evidence based upon operation for one season, consisting of slightly over two months. Gross returns for July, usually the better of the two months for an established business in the area, were $1967. For August they increased

to $4361. A jury could find that this was an indication of favorable prospects for the future, as the plaintiff's expert testified. According to his testimony, he would expect that if properly operated, the gross income would double in the second year, with smaller increases in the succeeding three years.

"The difficulty of determining the sum which will recompense a person for the wrongful act or omission of another is not ordinarily regarded as a sufficient reason for not allowing the injured party any damages." *Lee* v. *Dow,* 71 N.H. 326, 327, 51 A. 1072, 1073 ( 1902 ). "By the weight of authority, and what we believe to be the better view, uncertainty as to the amount is no reason for disallowing [recovery] when the uncertainty is caused by the defendant's unexcused breach of the agreement." *McLaughlin* v. *Union-Leader*, 100 N.H. 367, 369, 127 A.2d 269, 271-72 ( 1956 ); *see* 5 Williston, Contracts *ss.* 1345, 1346 ( rev. ed. 1937 ); 5 Corbin, Contracts *s.* 1022, at 139, 143-45 ( 1964 ).

The defendant's motion to set the verdict aside, grounded primarily upon the speculative nature of the proof of lost profits, was properly denied. *Story Parchment Co.* v. *Paterson Co.,* 282 U.S. 555, 563-64, 75 L. Ed. 544, 548-49, 51 S. Ct. 248, 250-51 ( 1931 ); *J. H. Horne & Sons Co.* v. *Bath Fibre Co.,* 272 F.2d 8, 11 ( 1st Cir. 1959 ). Other exceptions taken by the defendant, so far as they relate to issues briefed and argued, have been considered, but are without merit. Exceptions to the denial of the defendant's requests for instructions to the jury have not been argued, and are deemed to have been waived.

*Judgment on the verdict.*

All concurred.