ZELL–AIRE OF NEW ENGLAND, INC.,
Plaintiff, Appellant,

v.

ZELL–AIRE CORPORATION, et al.,
Defendants, Appellees.

ZELL–AIRE OF NEW ENGLAND, INC.,
Plaintiff, Appellee,

v.

ZELL–AIRE CORPORATION,
Defendant, Appellant,

and

Electro Energy Systems, Inc., et al.,
Defendants, Appellees.

Nos. 81–1658, 81–1669.

United States Court of Appeals,
First Circuit.

Argued May 4, 1982.

Decided July 9, 1982.

Charles Donelan, Boston, Mass., with whom Day, Berry & Howard, Hartford, Conn., Howard B. Myers, and Myers & Laufer, Concord, N. H., were on brief, for Zell-Aire of New England, Inc.

Richard V. Wiebusch, Manchester, N. H., with whom William J. Donovan, and Sheehan, Phinney, Bass & Green Professional Ass'n, Manchester, N. H., were on brief, for Zell-Aire Corp.

Arthur O. Gormley, Jr., Nashua, N. H., for Electro Energy Systems, Inc., and Walter S. Marson.

Before COFFIN, Chief Judge, ALDRICH and BREYER, Circuit Judges.

PER CURIAM.

■ Contrary to the main argument advanced in the brief of plaintiff/appellant (ZANE), this case does not involve the issue of whether price fixing is unlawful *per se* —a proposition well established in the law at least since *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) (horizontal) and *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911) (vertical). *Cf.* 4 P. Areeda and D. Turner, *Antitrust Law,* ¶¶ 104, 901 (1978, 1980). Rather, it raises the question of whether defendant/appellee Zell-Aire Corporation

terminated the plaintiff, its distributor, as part of an unlawful effort to fix or to maintain resale prices or for independent, legitimate business reasons. *Cf. Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 113–15 (3d Cir. 1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981); P. Areeda & D. Turner, *supra* at ¶ 316 (1978). This question is one of fact, as to which we are not to set aside the finding of the district court unless it is "clearly erroneous." Fed.R.Civ.P. 52(a). *See Phillips v. Crown Central Petroleum Corp.*, 602 F.2d 616, 629 (4th Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1021, 62 L.Ed.2d 756 (1980); *Cromar Co. v. Nuclear Materials & Equipment Corp.*, 543 F.2d 501, 511 (3d Cir. 1976).

We have reviewed the record and we conclude that the district court's finding against the plaintiff is adequately supported. We grant that plaintiff at trial made out a strong *prima facie* case that unlawful price fixing was behind its termination: its contract contained a resale price fixing clause; the letter of termination mentioned a failure to live up to this clause; and the incident that immediately led to termination involved price cutting on its part. Nonetheless, the defendant effectively rebutted that case. It showed, out of the mouth of plaintiff's president, that defendant had never practiced or enforced resale price maintenance; it produced considerable evidence that plaintiff had failed to live up to its market development commitments; and it effectively tied the "price-cutting" features of the termination-provoking incident to other features such as misrepresentation and market neglect. This evidence allowed the trial judge reasonably to draw the inference that there was no effort to fix prices. All this evidence is reviewed in detail in the district court's opinion, which, in turn, is well supported in the record.

■ Defendant Zell-Aire in turn appeals the district court's denial of its counterclaim against ZANE. That counterclaim is based upon ZANE's failure to live up to its contractual commitment to purchase $200,-000 worth of goods from Zell-Aire in 1981. The district court initially denied Zell-Aire's claim on the ground that it had not offered evidence of damages—a denial which we take to mean that any evidence offered by Zell-Aire was inadequate. In responding to Zell-Aire's motion to reconsider, the court added that, even if it assumed "*arguendo*," that the damage evidence was sufficient, Zell-Aire had not proved liability.

Zell-Aire does not point to any argument made after its opening statement related to counterclaim damages, nor did defendant make any effort to tie evidence introduced at trial to that claim. Rather, it now contends that the following two items were sufficient, if unrefuted, to prove its damages: 1) a letter showing that ZANE had fallen short of its promised $200,000 quota by about $91,000; 2) its own 1980 financial statement showing, among other things, a "gross profit" of $212,790 on gross "sales" of $704,964.

Under New Hampshire law (which the parties apparently accept as controlling, *see generally* Annot., 50 A.L.R.2d 227 (1956)), "[t]he burden of proving the extent and amount of such damages is placed upon the party seeking them," *Pugliese v. Town of Northwood Planning Board*, 119 N.H. 743, 751–52, 408 A.2d 113 (1979); *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285 (1977). And, here the trial court could reasonably find that Zell-Aire (the counterclaim plaintiff) failed to meet its burden of proof. Zell-Aire did no more than present a few figures that were highly ambiguous; it presented no witnesses nor did it make any argument to remove the ambiguity or to explain just how the figures proved the amount of damages caused by ZANE's failure to meet its quota. *Cf. Wilko of Nashua, Inc. v. Tap Realty, Inc.*, 117 N.H. 843, 850, 379 A.2d 798 (1977); *Van Hooijdonk v. Langley*, 111 N.H. 32, 34, 274 A.2d 798 (1971).

One source of ambiguity arises from the fact that the financial statement deals with 1980 and 1979, not 1981, the year at issue. The financial statement lists a "gross profit" figure for Zell-Aire of $212,790 on a

gross "sales" figure of $704,964 for 1980. It lists different figures for 1979. The record contains evidence of significant price fluctuations and of poor business conditions in New England. Thus, there is little reason to believe that Zell-Aire's 1981 prices and costs on the lost sales would have been similar enough to those of 1980 to have yielded similar "gross profits." Moreover, even if one assumes that 1981 resembles 1980, the financial statement figures appear to be a national average. What reason is there for assuming that Zell-Aire's profit margins were the same in New England as in the other regions where it sells? There is evidence of poor and fluctuating business conditions in New England, and of Zell-Aire's specific interest in building up the New England market—all of which suggests geographically nonuniform price/cost relationships. Finally, for damage purposes, one is interested in *net* profits, not gross profits. Yet, the financial statement on its face indicates that to move from "gross" to "net" profit, one must subtract "general and administrative expenses" and that these expenses fluctuate annually. In 1979 they amounted to $66,000; in 1980, to $90,000; there is no evidence as to 1981. Nor is there any clear indication as to whether these "general and administrative expenses" change with increasing sales. Perhaps there is information in the record as to some, or all, of these points, but if so, we have not found it. One who bears a burden of proof must present the relevant information in usable form to the court, and that was not done here.

Thus, even without reaching the issue of liability (where, as the district court pointed out, there are additional reasons for doubting that Zell-Aire could prevail), the evidence presented on damages does not rise above the level of "speculation, conjecture or surmise." *Cf. J. H. Horne & Sons Co. v. Bath Fibre Co.*, 272 F.2d 8, 11 (1st Cir. 1959) *quoting from Randall v. Peerless Motor Car Co.*, 212 Mass. 352, 99 N.E. 221 (1912). The trial court's initial holding is fully supportable.

As to both the claim and the counterclaim, the judgments of the district court are

*Affirmed.*