Hillsborough
No. 85-409

## RESTAURANT OPERATORS, INC.

v.

## PATRICIA D. JENNEY

November 7, 1986

*Martina, Hubbard & Quinn P.A.*, of Amherst (*Dennis M. O'Driscoll* on the brief), by brief for the plaintiff.

*Hamblett & Kerrigan P.A.*, of Nashua (*Richard C. Gagliuso* on the brief), by brief for the defendant.

BATCHELDER, J. The issues in this case involve the extent of the contractual duty of the defendant-lessor to restore burned premises and the amount of damages that are due to the plaintiff-lessee for lost profits arising from the defendant's breach of that duty. Trial without jury in the Superior Court (*Pappagianis*, J.) resulted in a verdict for the plaintiff and an award of $131,500 for lost profits. The defendant's motion to reconsider and set aside the verdict was denied. The defendant presents two issues for our review: (1) whether the evidence is insufficient to support a verdict that the defendant breached the lease; and (2) whether the trial court erred in awarding damages for future lost profits.

The plaintiff had operated a restaurant for four years in the building leased from the defendant. On October 1, 1982, the plaintiff renewed the lease for five years, pursuant to paragraph three of the lease. On the night of October 11, 1982, a fire severely damaged the defendant's building. Prior to the fire, the restaurant had never made a profit.

Approximately a month before the plaintiff brought its complaint, the defendant began to reconstruct the building as an office. The plaintiff sued for specific performance of paragraph 15 of the lease, which it claimed compelled the defendant to rebuild the restaurant. The plaintiff also sued in the alternative for profits lost due to the defendant's failure to restore the restaurant. However, the plaintiff did not attempt to enjoin reconstruction for any purpose other than as a restaurant. Thus, at the time of trial, the building had been rebuilt as an office, so specific performance was no longer practical.

The trial court reviewed paragraph 15 of the lease, which states in pertinent part:

> "In the event that the leased premises shall be totally destroyed . . . or shall be so damaged that repairs and restoration cannot be accomplished within a period of ninety (90) days from the start of such repairs and restoration, . . . this Lease shall automatically terminate. . . . In the event the leased premises shall be so damaged that repairs and restoration can be accomplished within a period of ninety (90) days from the start of such repairs and restoration, such repairs shall be diligently begun and substantially completed by Lessor within said period

and this lease shall continue in effect in accordance with
its terms . . . ."

The court interpreted this language to mean that the ninety-day
count must commence when reconstruction begins, not at the date of
the fire, and not at the beginning of cleanup or ordering of mate-
rials. The trial court then found that the premises could have been
restored within ninety days of the commencement of reconstruction.
Accordingly, the court concluded that the defendant had breached
her duty to restore the restaurant and awarded the plaintiff his lost
profits for the five-year lease term. The court found that the restau-
rant had reached a break-even point and there was strong evidence
of future bookings, from which a profit could be expected.

The defendant argues that the trial judge's interpretation of
paragraph 15 of the lease was erroneous and that his finding that
the premises could be restored in ninety days was unsupported by
the evidence. The defendant argues further that even if she did
breach her duty, the plaintiff had earlier breached by failing to pay
his rent, thus excusing her performance. On the issue of damages,
the defendant argues that there can be no award for future profits
where the plaintiff's restaurant had never earned a profit.

 We begin our analysis by noting that in reviewing a decision
by the superior court our standard is not whether we would have
found differently, but whether a reasonable person could find as the
trial court did. *Cutting v. Town of Wentworth*, 126 N.H. 727, 728, 497
A.2d 839, 840 (1985) (citing *Durant v. Town of Dunbarton*, 121 N.H.
352, 357, 430 A.2d 140, 144 (1981)).

 We have held that we will construe a lease as a contract,
*Turcotte v. Griffin*, 120 N.H. 292, 294, 415 A.2d 668, 669 (1980), and
that the meaning of a contract is ultimately a matter of law for this
court to decide, *Baker v. McCarthy*, 122 N.H. 171, 174–75, 443 A.2d
138, 140 (1982). In reviewing a contract we will give its language
the interpretation that best reflects the parties' intentions. *Thiem v.
Thomas*, 119 N.H. 598, 602, 406 A.2d 115, 118 (1979). However,
"[w]hen there is a question of fact concerning what was intended by
certain terms within a contract, the dispute is to be resolved by the
trier of fact, whose findings will be upheld if supported by the evi-
dence." *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d
12, 16 (1984) (citing *Peabody v. Wentzell*, 123 N.H. 416, 418–19, 462
A.2d 105, 107 (1983)).

 Turning now to the lease, we observe that paragraph 15 of
the lease leaves ambiguous exactly what is meant by the "start of
such repairs and restoration." Furthermore, it does not say any-

thing at all about who may determine the feasibility of reconstruction in a ninety-day period. At trial, the defendant litigated on the theory that the period began on the date of the fire or, at the latest, on the date she could begin to clean up the fire debris and order replacement materials. The plaintiff's reconstruction experts, on the other hand, expressly excluded cleanup time from their time estimates. Confronted with this divergence, the trial judge looked to the language of the lease and concluded that "the start of such repairs" meant the actual commencement of reconstruction, after the debris had been removed and the restoration materials prepared. We cannot say that the trial judge's conclusion was unreasonable or erroneous. We further note that, when reconstruction is possible within ninety days, paragraph 15 requires only that the repairs be substantially completed in that time. Thus, it appears that, in the lease, the parties were using the ninety-day period as a measure of the severity of damage rather than as a deadline for resuming restaurant operations.

The plaintiff presented two expert witnesses to testify as to the time needed to rebuild the premises. One of them, Edward Fillmore, stated that he had performed fire restorations on similar buildings and that he could restore the building to its pre-conflagration conditions within sixty to eighty days. He also stated that, based on his dealings with suppliers over the course of eighteen years of construction of similar buildings, he could obtain the needed materials without delay.

The plaintiff's other expert, Ronald Pomerleau, a general contractor, testified that the construction of the restaurant building was that of a very large house. He testified that the restoration would take no longer than eighty-one days and indicated that much of the work could be done simultaneously, thus reducing the total time needed for completion. The defendant argues that if the work would take eighty-one working days, then it would take more than ninety calendar days. Nonetheless, it was not unreasonable for the trial judge to find that a realistic reduced schedule would have been less than ninety days.

 The trial judge listened to expert witnesses presented by the defendant, but found them less persuasive than the plaintiff's. The trier of fact is in the best position to measure the persuasiveness and credibility of evidence and is not compelled to believe even uncontroverted evidence. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 350, 415 A.2d 671, 674 (1980) (citing *Cragin v. Woollett*, 104 N.H. 202, 206, 182 A.2d 457, 460 (1962)). Based on a review of the entire record before the trial court, we find no abuse of discre-

tion, and conclude that a reasonable person could find as the trial court did, that the premises could have been restored within the ninety-day period and that the defendant had therefore committed a breach of the lease.

Before examining the issue of damages, we note the defendant's argument that, even if she did breach the lease, the plaintiff defaulted on its rent before she committed any breach, thus excusing her from performance. There is extensive evidence contrary to this assertion, and the trial court's rejection of it was entirely reasonable.

■ Lastly, we come to the issue of damages. We have previously held that "in reviewing damage awards, we will consider the evidence 'in the light most favorable to the prevailing party.'" *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 124, 441 A.2d 1167, 1170 (1982) (quoting *Martin v. Phillips*, 122 N.H. 34, 37, 440 A.2d 1124, 1126 (1982)). We noted in *Van Hooijdonk v. Langley*, 111 N.H. 32, 34, 274 A.2d 798, 799–800 (1971) that "any undertaking to establish the amount of future gains prevented is likely to encounter difficulty in satisfying the requirement of reasonable certainty of proof." However, we also stated there that "[t]he real issue with respect to the testimony of the witness was . . . whether there was sufficient relevant data so that his opinion as to future profits could serve to aid in resolving uncertainties." *Id.* at 34, 274 A.2d at 799.

■ The defendant asserted at trial that the restaurant had lost money during each year of its operation. However, the plaintiff testified that its business had improved steadily, had expanded quickly during the five months preceding the fire, had reached the break-even point and gave every prospect of continued growth. This testimony was uncontradicted by any witness and was corroborated by the mother of the plaintiff's principal stockholder, who had invested her money and her professional talents in the restaurant. The plaintiff's experts based their projections on extensive financial data and were able to establish clear trends. Evidence was also presented that at the time of the October fire, the functions facility was already booked for the whole month of December. We cannot say that there was an insufficient basis for calculating lost profits. In *Van Hooijdonk*, we upheld an award for lost future profits for a business that had operated for only two months. In *Wilko of Nashua, Inc. v. TAP Realty, Inc.*, 117 N.H. 843, 379 A.2d 798 (1977), we upheld an award for lost future profits for a Kentucky Fried Chicken franchise and for a Chinese restaurant, both of which had not yet even opened, where the franchisee presented the financial

records of similar Kentucky Fried Chicken franchises and where the proprietor of the Chinese restaurant presented the testimony of a local restaurateur who operated a similar establishment. *Id.* at 850, 379 A.2d at 803. In contrast, in *Whitehouse v. Rytman*, 122 N.H. 777, 451 A.2d 370 (1982), we upheld a master's denial of lost profits for a chicken-raiser when the plaintiff had failed to produce any evidence to support his essential assumption that the market price of chickens would not drop, and when that assumption was contradicted by the defendant's witnesses and even by the plaintiff's own conduct. In the present case, since the evidence was not only far stronger than in *Whitehouse*, but formed an even more conclusive basis for prediction than was the case in either *Van Hooijdonk* or *Wilko*, sufficient data was presented to support the court's award of damages. Accordingly, we affirm the trial court's decision.

*Affirmed.*

All concurred.