Sherman MARKMAN and Betty Lea Markman, Appellants,

v.

RUSSELL STATE BANK, a corporation, Appellee.

No. 8303.

United States Court of Appeals Tenth Circuit.

April 1, 1966.

Clarence P. Green, Oklahoma City, Okl., for appellants.

Phil S. Hurst, Oklahoma City, Okl. (Richard W. Fowler, Oklahoma City, Okl., with him on the brief), for appellee.

Before MURRAH and SETH, Circuit Judges, and LANGLEY, District Judge.

LANGLEY, District Judge.

The appellants, Sherman Markman and Betty Lea Markman, husband and wife, together with two other couples not here involved, on April 26, 1960, at Russell, Kansas, executed a promissory note in the amount of $40,490.40 to one Bud Brandeberry. The note was payable in 180 days but contained a consent to extension of the payment date without notice after maturity. Later, on July 22, 1960, the same persons executed an additional promissory note to Bud Brandeberry in the amount of $45,000.00, payable October 23, 1960. This note contained the same provision as the first for extension of payment date after maturity. Before they became due both notes were endorsed by Bud Brandeberry to the Russell State Bank, Russell, Kansas, as security for his indebtedness to the bank. On April 30, 1963, the bank filed this suit on the notes, against the Markmans only, who were citizens of the State of Oklahoma, claiming an amount due of $47,500.00, plus interest. Judgment was entered on February 1, 1965, in favor of the bank and against the Markmans, after trial, for the sum of $37,301.70, with interest from July 15, 1964, the amount

then due the bank from Brandeberry. From this judgment the Markmans have appealed.

It appears that early in 1960, for the purpose of establishing a basis for substantial borrowing from the Russell State Bank, Brandeberry furnished to the bank as collateral security for the loans certain pledges of stocks and mutual funds, mortgages on real estate, and an assignment of life insurance. As additional collateral, required by the bank, he secured and endorsed the promissory notes sued on in this action. The makers of the notes, including the Markmans, were fully advised as to the intended use of the notes. With this security in hand, the bank loaned large sums to Brandeberry, at one time the amount reaching $73,755.40. The loans were made on notes executed by Brandeberry to the bank, which were extended at their maturity dates by new notes for the balance due. At the time suit was filed by the bank on the Markman notes, Brandeberry's note to the bank, on which there was owing $47,500.00, was not due. At the time of trial the renewal note then current was not due. The value of the real estate mortgages held by the bank was $17,500.00, the stocks and mutual funds in excess of $64,000.00.

In the trial of the case and on appeal the Markmans' position is, first, that their notes were subject to defenses against Brandeberry and therefore the bank should have been required to resort to the other collateral pledged by Brandeberry to the bank, which was not subject to such defenses, before suing to collect on the notes; and second, that they were accommodation makers for Brandeberry and as such were entitled to be subrogated to the other collateral received by the bank from Brandeberry, the accommodated party. We find neither contention tenable.

■■ As to their first proposition, the appellants urge application of the doctrine of marshaling assets. But there is no basis in the facts of this case for application of the doctrine. Appellants' argument on this point was well and soundly answered in Sowell v. Federal Reserve Bank of Dallas, Texas, 294 F. 798 (5th Cir.). In that case, involving substantially similar facts, the court said:

"Defendant's contention that the suit should have been stayed until plaintiff had exhausted its other collateral is untenable in reason and unsupported by authorities. The doctrine of marshaling assets applies only to the case of a junior lien holder, who seeks to compel a senior lien holder to exhaust security, which the senior has, and which the junior has not access to, and only in cases of a common debtor to two creditors for the protection of the junior creditor. It does not require a bona fide holder of negotiable paper, pledged as collateral to an indebtedness, to proceed first against other collateral, because of equities alleged to exist between the original parties to the pledged paper. The obligation of the maker, as to the bona fide holder, is to pay certainly at a fixed time. Payment at the fixed time may be vital to the holder of the paper, especially when it is a bank."

In affirming the Sowell case, 268 U.S. 449, 45 S.Ct. 528, 69 L.Ed. 1041, the Supreme Court said: "The plaintiff in error is bound to pay his obligation according to its tenor. He cannot deny his own contract merely because his creditor has acquired other rights with which he may satisfy his debt and because he wishes to avail himself of an equitable set-off against the payee of the note."

A contention similar to appellants' was made in Elk Valley Coal Co. v. Lexington Third National Bank, 157 Ky. 617, 163 S.W. 766, which involved a suit by the bank against the coal company as maker, J. M. Thompson as endorser, and H. C. Thompson as payee, of a $2,500.00 note pledged by H. C. Thompson to the bank to secure his indebtedness which at the time of suit amounted to $2,148.35. Maker and endorser claimed to be parties for the

accommodation of H. C. Thompson. The court said:

"While the defense interposed by the coal company and J. M. Thompson, if established, is available against H. C. Thompson, it is not available against the plaintiff bank. Under these circumstances, however, the bank, being a pledgee, is a holder for value only to the extent of its lien * * * and can recover only to the extent of the debt for which it holds the note sued on as collateral security * * * There is no merit in the contention that defendants are entitled to have plaintiff exhaust the other collateral before enforcing the note sued on. It is well settled that the maker of a collateral note cannot compel the pledgee, before enforcing it, to exhaust other securities held by him for the principal debt, even though the maker has a set-off available against the pledgor. * * * Nor is the fact that the principal obligation was not due at the time of bringing the suit available as a defense. The pledgee has the right to enforce the collection of collateral, even though the principal debt is not yet due."

 These cited cases fairly state the law, we think. We hold, therefore, that the bank, as pledgee, was entitled to sue the appellants on their notes when due, without first resorting to other collateral held of the pledgor; that suit was timely begun although Brandeberry's indebtedness to the bank was not then due, the maturity of the pledged notes being determinative, not the maturity of the secured obligation; and that the trial court correctly limited the judgment to the amount due the bank from Brandeberry at the time of entry.

 As to their second point, appellants' claim to be subrogated to the bank's securities pledged by Brandeberry is dependent upon the establishment of both their position as accommodation makers and payment of the obligation by them. Such position as accommodation makers may not be established by a proceeding which, as to the accommodated party, would be ex parte. As said in 83 C.J.S. Subrogation § 63, pp. 714, 715, "The doctrine of subrogation is not self-executing, and a person by payment does not ipso facto become subrogated to the rights of the creditor; he acquires only a right to a subrogation which must be actively asserted before subrogation can actually take place. * * * Subrogation is a right of action only which must be established by a judicial proceeding in which two distinct sets of facts are involved, that is, those which show the right to be subrogated and those which show that the claim to which subrogation is had may be enforced against the principal." See also Blitz v. Metzger, 119 Kan. 760, 241 P. 259. The appellants are not in a position to claim the role of accommodating parties to Bud Brandeberry here because the latter's rights and liabilities may not be adjudicated in a proceeding to which he is not a party. Appellants not only may not assert their right to subrogation until they have paid the obligation for which the securities were pledged, but must do so in an action to which he is a party. The record does not support appellants' further contention that the judgment of the trial court denies them the right to subrogation upon making payment. The judgment is silent on that subject. The order overruling appellants' motion to amend the findings merely declined their request for the court to find they occupied the position of accommodation parties and to conclude that they are entitled to subrogation, which is what the trial court should have done.

Affirmed.