Grafton
Nos. 80-286
80-301

K–ROSS BUILDING SUPPLY CENTER, INC.

v.

WINNIPESAUKEE CHALETS, INC. & a.

June 26, 1981

*Donald C. Koury,* of Lebanon, by brief for the plaintiff.

*Stanley, Tardif & Shapiro,* of Concord (*R. Peter Shapiro* on the brief), by brief for defendant Arnold Appell.

PER CURIAM. The plaintiff, K-Ross Building Supply Center, Inc., seeks to hold defendant Arnold Appell, an employee of defendant Winnipesaukee Chalets, Inc. (Winnipesaukee), personally liable on a $3,000 check that Appell gave the plaintiff in payment of a corporate debt owed the plaintiff by Winnipesaukee. After a hearing, the Master (*Paul A. Gruber,* Esq.) recommended

that defendant Appell be held jointly and severally liable in the amount of $3,000 along with Winnipesaukee and defendant Leonard Appell, also an employee of Winnipesaukee. The Superior Court (*Johnson*, J.) approved the master's recommendation, and defendant Appell appealed.

During the summer of 1979, Arnold Appell contacted the plaintiff's credit manager, Sidney D. Gold, about purchasing pipe worth $3,000. The plaintiff and Winnipesaukee had enjoyed a satisfactory business relationship with one another since 1977. Because Winnipesaukee's account was considerably past due, however, Gold told Appell that he could not extend any more credit to Winnipesaukee. The parties agreed that a check for $3,000 would be given to the plaintiff's driver when he delivered the pipe to Winnipesaukee. The driver arrived with the materials but there was no check awaiting him. Nevertheless, because Gold had been able to obtain payment from Winnipesaukee in the past, he instructed the driver to leave the pipe at Winnipesaukee's work site.

Several days later, in July 1979, Gold visited Appell at Winnipesaukee's local office and requested payment for the shipment of pipe. Appell signed an undated check in the amount of $3,000 and gave it to Gold. According to the master's report, this "check did not bear any printed name as to who was the owner of the account." Appell told Gold that there were not sufficient funds to cover the check at that time but that he would advise Gold when the check could be cashed.

The next day Gold contacted the drawee-bank and verified the fact that there were insufficient funds in the account on which the check was drawn to cover it. During the next several months, Gold contacted Appell on numerous occasions regarding the status of the check and was always told that the check still could not be covered. Sometime during this period, the plaintiff recovered approximately two-thirds of the pipe in question and credited $2,146.15 to Winnipesaukee's account. Finally, on December 4, 1979, the plaintiff dated the check and presented it to the drawee-bank for payment. The check was returned for insufficient funds, and this litigation ensued.

Defendant Appell (hereinafter the defendant) contends that the master erred in finding him personally liable on the check. He argues that the check was a corporate check drawn on Winnipesaukee's account, that he signed the check on behalf of Winnipesaukee to satisfy a corporate debt, and that, therefore, he cannot be held personally liable on the instrument.

For reasons that escape us, the check in question is not contained in the record before us. Nevertheless, it is clear from the transcript, the parties' briefs, and the master's report that the corporation's name did not appear on the check. Nor did the defendant, in signing the check, indicate that he was acting in a representative capacity. Rather, he simply signed the check in the lower right-hand corner as would the drawer of an instrument. *See* U.C.C. § 3–402, Official Comment, 2 U.L.A. 308 (1977). Thus, there is nothing on the face of the instrument to indicate that it represented anything other than the defendant's personal obligation.

■ The defendant asserts, however, that Gold, in accepting the check, knew in fact that the defendant was issuing a corporate check on behalf of the corporation. There is conflicting testimony on this issue. In any event, for the reasons that follow, we conclude that this evidence can have no bearing on the issue of the defendant's liability.

RSA 382–A:3–403(2) provides:

> "An authorized representative who signs his own name to an instrument
>
> (a) is personally obligated if *the instrument* neither names the person represented nor shows that the representative signed in a representative capacity. . . ."

(Emphasis added.) The official comment to this provision of the Uniform Commercial Code makes it clear that when, as in this case, the agent signs his name *only*, such signature "personally obligates the agent and parol evidence is inadmissible under subsection (2)(a) to disestablish his obligation." U.C.C. § 3–403, Comment 3, 2 U.L.A. 311 (1977); *accord, Norfolk County Trust Co. v. Vichinsky*, 5 Mass. App. Ct. 768, 768, 359 N.E.2d 59, 60 (1977); *Barden & Robeson Corp. v. Ferrusi*, 52 A.D.2d 1061, 1062, 384 N.Y.S.2d 596, 597 (1976). This rule applies even between the immediate parties to the instrument, for "[o]ne who executes . . . [an instrument] in his own name with nothing on the face of the . . . [instrument] showing his agency cannot introduce parol evidence to show that he executed it for a principal, *or that the payee knew that he intended to execute it as agent*." (Emphasis added.) *Bostwick Banking Co. v. Arnold*, 227 Ga. 18, 22, 178 S.E.2d 890, 893 (1970); *see Giacalone v. Bernstein*, 348 So. 2d 679 (Fla. Dist. Ct. App. 1977); *Norfolk County Trust Co. v. Vichinsky supra; Barden & Robeson Corp. v. Ferrusi supra*. Thus, "[e]ven if the person taking the instrument knows that the agent is signing in a representative capacity, the agent cannot introduce parol evidence to show that

his signature was made for another." J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 13–4 at 493 (2d ed. 1980). Because the check signed by the defendant indicated neither the principal's name nor the fact that the defendant was signing in a representative capacity, he is personally liable on the check. RSA 282–A:3–403(2)(a).

The defendant next argues that even if RSA 382–A:3–403(2)(a) imposes personal liability on him, he nevertheless has a defense to liability. Specifically, the defendant contends that Gold, the plaintiff's representative, accepted the check with the understanding that it would not be presented for payment until the defendant informed the plaintiff that there were sufficient funds to cover the check and that, because the plaintiff dated and presented the check for payment without having been notified by the defendant that it could do so, he cannot be held liable on the check. We cannot accept this argument.

██ We recognize that it is common practice for a person to issue a check and request the payee to "hold on to it" for a reasonable period of time to enable the drawer to acquire and/or transfer the funds necessary to cover the check. One who accepts a check in satisfaction of a debt in these circumstances, however, does not do so with the understanding that the check will be made good only if and when it pleases the drawer. Rather, he accepts the check with the expectation of actually receiving payment within a reasonable time. *Cf. Daum v. New England College*, 120 N.H. 704, 705, 422 A.2d 1035, 1036 (1980); *Johnson v. Korsak, Inc.*, 120 N.H. 412, 415, 415 A.2d 1141, 1143 (1980); *Newcomb v. Ray*, 99 N.H. 463, 466, 114 A.2d 882, 883 (1955). Indeed, Gold testified, and the master found, that the defendant told Gold when he issued the check that "at that particular time there . . . [were] not sufficient funds to cover the check but that . . . [the plaintiff] would be notified *shortly* when to present it to the bank." (Emphasis added.) In this case, at least four months had elapsed between the time the check was issued and the time it was presented for payment. Although what constitutes a "reasonable time" is ordinarily a question for the trier of fact, *Newcomb v. Ray supra*, we are satisfied that a reasonable time had long since passed at the time the plaintiff presented the check for payment. In these circumstances, the defendant's alleged "defense" is unavailing, and he cannot complain about the plaintiff's decision finally to present the check for payment.

█ The defendant next asserts that the undated check was an "incomplete instrument" within the meaning of RSA 382–A:3–

407(1)(b), that the plaintiff, by dating the check, materially altered it, and that his personal liability on the check is therefore discharged. *See* RSA 382–A:3–407(2)(a). We disagree.

We first note that "[t]he negotiability of an instrument is not affected by the fact that it is undated. . . ." RSA 382–A:3–114(1). Thus, we fail to see how the check in question is "incomplete" and, consequently, how the addition of the date constituted a "material alteration." Furthermore, since the defendant impliedly promised to make the check good within a reasonable time, the fact that the plaintiff dated the check long after a reasonable time had elapsed did not in any way change the contract of the parties to the instrument within the meaning of RSA 382–A:3–407(1).

The defendant's final argument relates to the $2,146.15 credit that Winnipesaukee received when some of the pipe delivered by the plaintiff was returned to it. The defendant contends that he is entitled to a credit in that amount because he gave the plaintiff the $3,000 check as payment for that pipe. We agree.

Even if the plaintiff is a holder in due course, it still took the check subject to the personal defenses of parties with whom it had dealt. RSA 382–A:3–305(2); *Wilmington Trust Co. v. Delaware Auto Sales*, 271 A.2d 41, 42 (Del. 1970). Thus, the defense of want or failure of consideration is available to the defendant. RSA 382–A:3–306(c); *Wilmington Trust Co. v. Delaware Auto Sales supra; Miller's Shoes & Clothing v. Hawkins Furn. & App.*, 300 Minn. 460, 467–68, 221 N.W.2d 113, 118 (1974).

There is nothing in the record to suggest that the defendant, in signing the check, was personally undertaking to assume or guarantee Winnipesaukee's debts generally in the amount of $3,000. *See Village Press v. Stephen Edward Co.*, 120 N.H. 469, 470–71, 416 A.2d 1373, 1374 (1980). *Ashland Lumber Co. v. Hayes*, 119 N.H. 440, 441, 402 A.2d 201, 202 (1979). Rather, the defendant gave the plaintiff the check as payment for specified goods—the pipe worth $3,000 delivered to Winnipesaukee in July 1979. Because the plaintiff recovered pipe worth $2,146.15, the defendant's liability on the check given in payment for the goods was discharged in that amount. Accordingly, the verdict for the plaintiff should be reduced to $853.85.

Although we have held the defendant liable on the check, the verdict against Winnipesaukee may also stand because it accepted and used pipe worth $853.85 and, therefore, impliedly promised to pay for those goods. *See Bennett v. Adams*, 362 S.W.2d

277, 281 (Mo. App. 1962); *Zirnhelt v. Ransom County*, 137 N.W.2d 785, 789 (N.D. 1965); *cf. Presby v. Bethlehem Village District*, 120 N.H. 493, 495, 416 A.2d 1382, 1383 (1980).

 Finally, the plaintiff contends that it is entitled to recover reasonable attorney's fees pursuant to RSA 544-A:2. Because we find that the defendant's personal liability is based on RSA 382-A:3–403(2)(a), not RSA ch. 544-A (Civil Liability for Bad Checks), we do not consider whether attorney's fees are recoverable under RSA 544-A:2.

*Affirmed in part; reversed in part.*