FIDELITY UNION BANK, PLAINTIFF-RESPONDENT, v. UNITED PLASTICS CORP., DEFENDANT, AND RONALD PROUDMAN, DEFENDANT-RESPONDENT, AND BRUNO BIZZARO, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 17, 1987—Decided July 7, 1987.

Before Judges O'BRIEN and SKILLMAN.

*John J. Pribish,* attorney for appellant (Kevin R. Brotz, on the brief).

*Edward A. Dreskin,* attorney for respondent Fidelity Union Bank.

No brief was filed on behalf of respondent Ronald Proudman.

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal involves a suit on a promissory note in the amount of $40,000. The face of the note indicates that the maker is defendant United Plastics Corporation, and it is signed by defendant Ronald J. Proudman, whose title is listed as "Pres.," and defendant Bruno Bizzaro, whose title is listed as "Sec." Proudman's and Bizzaro's signatures appear a second time on the back of the note immediately below the following words:

> Each of the undersigned endorsers waives presentment, demand for payment, protest and notice of dishonor of this note. If two or more of the undersigned are joint endorsers, such waiver as to them shall be deemed joint and several.

There is no indication that the signatures on the back of the note are in any corporate capacity.

United Plastics made nine payments of $1,000 each on the note and then went into default. The present suit was filed against United Plastics, Proudman and Bizzaro. A default was entered against United Plastics, which is now apparently insolvent, and the case went to trial before a jury solely against Proudman and Bizzaro.

Plaintiff proved the execution of the note. In addition, the commercial loan officer who negotiated and approved the loan testified that he clearly communicated to Proudman and Bizzaro that they were assuming personal responsibility for repayment of the loan. This testimony was corroborated by the fact that personal financial statements of Proudman and Bizzaro, dated shortly before the loan was made, were in the bank's file.

At the close of plaintiff's case, Bizzaro made a motion to dismiss. During the colloquy on that motion the trial court raised a question whether plaintiff was obligated to proceed against the collateral for the note before seeking judgment against Proudman and Bizzaro. At the conclusion of the argument on the motion the following exchange occurred between the court and counsel:

THE COURT: If you will agree that you have nothing to offer other than this fact that they did not proceed against the collateral, I can enter judgment in your favor providing you admit that if Mr. Dreskin is right, that he didn't have to proceed against the collateral, you owe the bank $50,000 after Mr. Richardson pays first.

[Counsel for Bizzaro]: Based upon the rulings of the Court, of course. That's where I am at this point..

THE COURT: We can do that.

[Counsel for Proudman]: What you are saying is everyone can rest at this point?

THE COURT: I think we need the Appellate Division on this particular question and I think that's the way to proceed. I don't want it to go up to the Appellate Division and have you fellows say to the Appellate Division, well, we never put in our defense of fraud or misrepresentation, whatever.

[Counsel for Bizzaro]: I would just say to the Court my only defense is what I have expressed to the Court and that's (a) that my client never understood that he was going to be an endorser—

THE COURT: I have no trouble ruling on that.

[Counsel for Bizzaro]: —and (b) in the absence of them demonstrating a proceeding against the collateral and claiming a deficiency there can be no evidence, and I am prepared to rest right now.

[Counsel for Proudman]: So am I on that basis.

THE COURT: You then agree if Mr. Dreskin is right, that he has no obligation to proceed against the collateral under these circumstances, that the two of you, whatever the arrangement is, whoever is first and secondarily liable, owe the bank $51,326.56 and I didn't get the per diem but whatever it is.

[Counsel for Proudman]: We don't stipulate that. We say if that's what you find. If you find against us on that point, that's the position we are at. We first say that the court has to find against us.

THE COURT: Well, I find, number one, that there is no obligation on the bank to explain to these men about personal liability. They are businessmen. They signed the contract. They signed the contract as an endorser, and I just got finished reading a Supreme Court case, I didn't read the whole thing, which says the word guarantor is merely an addition, the endorser is the word of art and that they are liable as endorsers. However, my judgment is the bank has to make some showing of what happened to the collateral and what were their efforts to proceed against the collateral and obtain satisfaction of their judgment in that fashion before they can proceed against your people.

Consequently, the trial court discharged the jury and indicated its intention to enter judgment in favor of Proudman and Bizzaro.

Plaintiff subsequently filed a motion "to alter or amend the Judgment on the grounds that as a matter of law plaintiff is not required to look to the collateral prior to proceeding against

the indorsers...." By letter opinion dated November 13, 1985, the trial court concluded that plaintiff was entitled to judgment against the indorsers of the note without first proceeding against the collateral. Accordingly, judgment in the amount of $51,536.56 plus costs was entered against Proudman and Bizzaro.

An appeal has been filed by Bizzaro.[1] Bizzaro argues that judgment should have been entered in his favor because plaintiff failed to proceed against the collateral on the note before suing him. In the alternative, he argues that the question of his personal liability as an indorser should have been submitted to the jury and hence that a new trial should be granted. He also argues that the grant of judgment in favor of plaintiff deprived him of the opportunity to proceed on his cross claim against Proudman for indemnification and contribution. We reject all of the points raised by Bizzaro and therefore affirm.

I

The holder of a note or other creditor has no obligation to proceed against collateral before proceeding against an indorser or other accommodation party. "[E]very indorser engages that upon dishonor ... he will pay the instrument according to its tenor at the time of his indorsement to the holder...." *N.J.S.A.* 12A:3–414(1). Consequently, "[o]nce an instrument has been dishonored and any necessary notice of dishonor given or protest made, the holder may immediately attempt to recover from any of the parties liable.... [T]he holder need not attempt to realize on the collateral." *Hawkland, UCC Series,* § 3–414.02, at 694 (1984); *see also Markman v. Russell State Bk.,* 358 *F.*2d 488 (10th Cir.1966); *Farmers Production Credit Ass'n v. Arena,* 145 *Vt.* 20, 481 *A.*2d 1064 (1984).

Bizzaro cites no authority for the proposition that a creditor must proceed against the collateral for a promissory note

---

[1] Proudman did not appeal and has filed no brief on this appeal.

before suing an indorser or other surety. Rather, the authorities relied upon by Bizzaro all deal with impairment of collateral by the holder of a note. Thus, Bizzaro cites *N.J.S.A.* 12A:3–606, which provides in pertinent part:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

\* \* \* \* \* \* \* \*

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

Bizzaro also quotes the statement in *Langeveld v. L.R.Z.H. Corp.*, 74 *N.J.* 45, 50–51 (1977) that "[i]t is a well-recognized principle of the law of suretyship that a release of collateral held by a creditor, or its impairment by improper action or inaction on his part, will extinguish the obligation of the surety, at least to the extent of the value of the security released or impaired." However, a claim of impairment of collateral by a creditor is a matter of affirmative defense. Bizzaro's answer did not raise this affirmative defense and he presented no evidence at trial that there had been any impairment by plaintiff of the collateral for the note. Therefore, Bizzaro's reliance upon *N.J.S.A.* 12A:3–606 and *Langeveld* is misplaced and his claim that plaintiff should have proceeded against the collateral before seeking judgment against him is without merit.

## II

■ *N.J.S.A.* 12A:3–403(2)(a) provides that:

An authorized representative who signs his own name to an instrument (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity ...

This section contains no authorization for the presentation of parol evidence to vary the terms of the instrument. Furthermore, the comment to this section confirms that "... parol evidence is inadmissible under section (2)(a) to disestablish [the alleged agent's personal] obligation."

There must be some indication from the form of a signature that it was made in a representative capacity before parol

evidence will be admitted under *N.J.S.A.* 12A:3-403(2)(b) to show that the alleged agent is not personally liable. As explained by a commentator in the field,

> When the plaintiff who sues the agent personally is one who dealt directly with the agent, and the signature either names the principal or indicates representative capacity, section 3-403(2)(b) permits the agent to introduce parol evidence of his agency status to avoid personal liability. The current version of the Code reverses the 1952 Code which excluded "parol evidence for any purpose except reformation." Evidently the Code draftsmen believed that anyone permitted to prove his agency by parol should offer as an entry fee some extrinsic evidence that he acted in a representative capacity. Accordingly, parol evidence is not admissible when the agent merely signs his own name but does not indicate either the fact of representation or the name of his principal. [*White & Summers, Uniform Commercial Code* (2nd ed. 1980), § 13-5 at 496].

The decisions in other jurisdictions also support the conclusion that parol evidence is inadmissible to show that a signature which unambiguously assumes personal liability was actually intended to be made in a representative capacity. *See, e.g., Lumbermen Associates, Inc. v. Palmer,* 344 *F.Supp.* 1129 (E.D.Pa.1972), aff'd 485 *F.*2d 680 (3rd Cir.1973); *Schwartz v. Disneyland Vista Records,* 383 *So.*2d 1117 (Fla.Ct.App.1980), rev. den. 392 *So.*2d 1378 (Fla.Sup.Ct.1980); *Southern Oxygen Supply Co. v. DeGolian,* 230 *Ga.* 405, 197 *S.E.*2d 374 (Sup.Ct. 1973); *Norfolk Cty. Trust Co. v. Vichinsky,* 5 *Mass.App.* 768, 359 *N.E.*2d 59 (1977); *Bradley v. Romeo,* 716 *P.*2d 227 (Nev. 1986); *K-Ross Bld'g Supply Center, Inc. v. Winnipesaukee Chalets, Inc.,* 121 *N.H.* 575, 432 *A.*2d 8 (Sup.Ct.1981); *Barden & Robeson Corp. v. Ferrusi,* 52 *A.D.*2d 1061, 384 *N.Y.S.*2d 596 (App.Div.1976). *See generally,* Annot., "Construction and Application of UCC § 3-403(2) Dealing With Personal Liability of Authorized Representative Who Signs Negotiable Instrument in His Own Name," 97 A.L.R.3d 798 (1980). In *Bradley v. Romeo, supra,* the court explained the relationship between 3:403(2)(a) and (b) of the Uniform Commercial Code as follows:

> Romeo argues that since this action involves the immediate parties, he is entitled under 3-403(2)(b) to demonstrate his intent to sign in a representative capacity only. However, 3-403(2)(b) applies only where the instrument names the person represented or shows that the signature is in a representative

capacity. Since the note neither names American nor indicates that Romeo signed on behalf of American, Romeo is personally obligated by virtue of 3–403(2)(a) and parol evidence of representative capacity is not admissible, even between the immediate parties. [716 *P.2d* at 228–229].

These out of state authorities are consistent with decisions in this State which recognize that there must be some ambiguity in the form of a signature on a negotiable note before parol evidence will be admitted to show the intent of the signature; or stated another way, that parol evidence is not admissible to contradict a signature which unambiguously reflects an assumption of personal liability. *See Norman v. Beling,* 33 *N.J.* 237 (1960); *Budelman v. White's Express & Transfer Co.,* 49 *N.J.Super.* 511, 518–520 (App.Div.1958); *cf. DeBlanco v. Dooley,* 164 *N.J.Super.* 155 (App.Div.1978); *The Wood Press, Inc. v. Eisen,* 157 *N.J.Super.* 57, 62 (App.Div.1978) ("Parol evidence was admissible under [*N.J.S.A.* 12A:3–403(2)(b) ] to resolve the ambiguity as to [individual's] signatory capacity.")

There was no ambiguity in Bizzaro's signature on the back of the promissory note. He signed the front of the note on behalf of the maker, United Plastics Corporation, as its secretary. He signed the back individually, as an indorser. Furthermore, Bizzaro did not allege that plaintiff had made any intentional misrepresentation with regard to the terms of the note. Under these circumstances, parol evidence was inadmissible to show that Bizzaro's unambiguous individual signature was intended to be made in a corporate capacity and hence there was no jury issue as to Bizzaro's individual liability on the note.

### III

Bizzaro argues that the entry of judgment in favor of plaintiff prevented the jury from considering his cross claim against Proudman. This cross claim reads as follows:

1. This DEFENDANT repeats the allegations of the complaint as set forth at length and as they may be applicable herein.

2. If this DEFENDANT is responsible on the note, it is a joint note of the DEFENDANTS and/or wholly the obligation of the corporate DEFENDANT.

WHEREFORE, this DEFENDANT demands judgment on this cross claim for contribution and indemnification as the facts may reveal together with interest, attorney's fees and costs of suit.

The judgment in this matter was entered "... against the individual defendants Ronald Proudman and Bruno Bizzaro in the amount of $51,536.56 plus costs." Hence, the judgment imposes joint and several liability against the individual defendants.

It appears from the promissory note that Proudman and Bizzaro occupy the role of accommodation indorsers who signed the note when it was originally executed. *See N.J.S.A.* 12A:3-415(4). Such indorsers are jointly and severally liable. *N.J.S.A.* 12A-3-118(e); *see Zapp Nat'l Bk. v. Metropolitan Planning & Redevelopment Corp.*, 308 *Minn.* 309, 242 *N.W.*2d 96 (1976); *Billingsley v. Kelly*, 261 *Md.* 116, 274 *A.*2d 113, 120-121 (1971). Hence, the form of judgment correctly reflects the liability of Proudman and Bizzaro.

Bizzaro states in a footnote to his brief he "... was prepared to prove at trial that Proudman had improperly dealt with the collateral to the prejudice of Bizzaro." However, Bizzaro's cross claim does not make this allegation. Nor did Bizzaro's counsel indicate at trial that he was prepared to present such evidence. Therefore, the claim is untimely.

Affirmed.