FDIC v. O'Flavahan                    CV-91-433-B    07/11/94

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Federal Deposit Ins. Corp.,
 as Liquidating Agent for
 Hillsborough Bank and Trust Co.

 v.                                        Civil No. 91-433-B

Kathleen O'Flahaven, et al.

O R D E R

Plaintiff Federal Deposit Insurance Corporation (FDIC) moves for reconsideration of this Court's order denying in part the FDIC's prior motion for summary judgment.

In sum, the Court has granted reconsideration on the basis of overlooked evidence, but found that it only gives rise to creating a factual issue for trial. Due to an intervening decision by the United States Supreme Court, the Court has reconsidered the applicability of federal law. Since the result would be the same under state law, however, the ruling stands firm. As more fully explained below, the motion is DENIED.

I.  Overview of Facts and Law

The relevant facts were set forth in this Court's prior order. In essence, this is an action by the FDIC to collect from Defendants Kathleen O'Flahaven and Percy Fennell on a promissory note for money allegedly lent by Hillsborough Bank and Trust to O'Flahaven, Fennell, and/or Teksource, Inc., the company for which they served as officers and directors.

It is difficult to succinctly state the rule of D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942) and 12 U.S.C. § 1823(e) while staying true to the way these doctrines have been applied. Nonetheless, the guiding principles were identified in the prior order and neither party has argued that they were described inaccurately. (Order, Part I, pp.2-3.)

In relevant part here, D'Oench, Duhme bars only claims or defenses based on matters outside the bank's official records. The implicit corollary being that defenses based on matters that are part of the bank's records are unaffected by D'Oench, Duhme. FDIC v. Bracero & Rivera, Inc., 895 F.2d 824, 827-30 (1st Cir. 1990), Commerce Fed. Sav. Bank v. FDIC, 872 F.2d 1240, 1246 (6th Cir. 1989). Section 1823(e) applies only to "agreements".

II. **Reconsideration of the Failure of Consideration Defense**

A.   The Legal Defense is Unaffected by D'Oench, Duhme

The defendants initially argued that the instant loan contract was not supported by consideration as to them because they were not entitled to personal use of the loan proceeds. This argument was summarily adjudicated as incorrect as a matter of law. (Order, Part V.A, pp.15-16.) As a second tack, defendants argued that the loan contract was not enforceable since the loan proceeds were never disbursed at all. Fennell and O'Flahaven asserted that these facts supported a legal defense of failure of consideration.

The Court ruled that this type of defense was viable under D'Oench, Duhme since it did not rely on proving any type of agreement and the information would and should have been plainly available to federal regulators reviewing the bank's records.

The Court further noted that the First Circuit (and, incidentally, the Sixth Circuit as well) had affirmed the viability of the analogous defense of discharge through payment in the context of FDIC enforcement and objections under D'Oench, Duhme. (Order, Part V.B.1, p.17, citing Bracero & Rivera, 895 F.2d at 826, and Commerce Fed., 872 F.2d at 1246.)

The FDIC does not directly address the First Circuit's relatively explicit holding in Bracero & Rivera. Nor does the FDIC address the analysis engaged in by the Court. Rather, the FDIC argues that a Fifth Circuit case holds to the contrary. In addition to ignoring the direct First Circuit authority, however, the case it relies upon is unavailing as it conflicts with neither the First Circuit's ruling nor this Court's ruling on the summary judgment motion.

As noted in Fennell's opposition, FDIC v. McClanahan, 795 F.2d 512 (5th Cir. 1986), did not involve a situation where the disbursement of the loan was in dispute. The McClanahan defendant argued that he had a defense because he did not receive the proceeds of the loan. The Fifth Circuit rejected this type of defense. The FDIC overlooks that this Court similarly rejected Fennell's and O'Flahaven's proposed defenses based solely on the grounds that they did not receive the proceeds.

The Fifth Circuit in McClanahan did not hold that there was no defense even though no one received the proceeds of the note - i.e., that the loan was never disbursed. Indeed, McClanahan recognized that

> D'Oench, Duhme has not been read to mean there can be no defenses at all to attempts by the FDIC to collect on promissory notes. . . . For example, . . . where the note

3

> imposes bilateral obligations on the parties [such as a
> duty to disburse the loan and a corresponding duty to
> repay it], rather than creating a unilateral obligation
> by the maker to pay a sum certain, courts have held that
> the maker may defend himself by contending that the bank
> breached its obligations under the note.

McClanahan, 795 F.2d at 515 (citations omitted).

The FDIC falls prey to a tyranny of labels in arguing that other courts have rejected "consideration"-type defenses under D'Oench, Duhme. The FDIC, however, has failed to identify a single "consideration" defense that was rejected even though it did not require proof of evidence outside of the bank's official records. Whether Fennell's and O'Flahaven's arguments are referred to as a failure of consideration, a failure of a condition precedent, or an inability to prove damages, the ultimate point remains the same -- it is fully consistent with D'Oench, Duhme to require proof that the loan was disbursed before authorizing collection for failure to repay since the amount disbursed and repaid would be contained in the bank's official records. (Order, Part V.B.1, pp.17-18.) The FDIC has not identified a material misconstruction of the law nor even identified any holding to the contrary of this Court's ruling. Reconsideration of the legal basis is denied.

B.    The Court Has Reconsidered the Factual Basis For the Order    Rather than provide declarations supporting its summary judgment motion, the FDIC relied upon declarations filed in prior state court proceedings that were buried in the documents filed with the notice of removal. Although the FDIC did not clarify that the declaration was located in the removal papers, the declaration was in fact there and, therefore, properly before the

5

Court.  The declaration was not considered because it was not located.  Having located the declaration, the Court finds that reconsidering the factual basis for the ruling is appropriate.

### C.  The "New Evidence" Does Not Conclusively Establish as a Matter of Law that the Loan was in fact Disbursed

Having determined that the defense based on non-disbursal was viable under D'Oench, Duhme, the Court went on to note that the FDIC had failed to rebut this defense by introducing any evidence. (Order, Part V.B.2, p.18.)  Pointing to the Gaffney affidavit filed in the state court action, the FDIC asserts that this is incorrect and seeks reconsideration.

The Gaffney affidavit does allege, albeit in conclusory terms, that the loan was completed -- "Pursuant to the Note, the Bank loaned the defendants $400,000." (Gaffney Aff., ¶ 3.)  The FDIC, however, presents no official bank records indicating that the loan was actually disbursed.  In opposition to the instant motion, Fennell points out that in discovery he requested that the FDIC produce all documents reflecting the flow of the loan proceeds and that, to date, the FDIC has failed to provide any such documents.  Fennell made this allegation in opposition to the previous motion to dismiss and the FDIC has never attempted to rebut it.

Combining the FDIC's inability to provide any documentary evidence that the loan proceeds were disbursed with Fennell's assertion that they were not, the result is a genuine issue of material fact to be resolved at trial.  Fennell's general denial might not have stood up against bank documents confirming the disbursal of the loan.  But when tested against a generic,

6

conclusory allegation that it was, Fennell's assertion is certainly sufficient to create a factual issue for trial.

**III. The Capacity Issues**

O'Flahaven and Fennell contend that they signed the notes only in their capacity as representative corporate agents, not as personal signatories acting on their own behalves. They cited to contradictions and ambiguities within the promissory note itself and also referred to extrinsic evidence to support their contention. The Court ruled that the extrinsic evidence was precluded by D'Oench, Duhme but that the promissory note itself was sufficiently ambiguous to preclude adjudication of the capacity issue as a matter of law. The Court ruled that because of the importance of federal oversight and the need for predictability by the FDIC, the question of capacity should be governed by federal law consistent with D'Oench, Duhme.

A. The Capacity Issue Might Arguably Be Governed by State Law

The Court's Order cited a string of cases from the First Circuit all holding that federal law governed the enforceability of notes sued upon by the FDIC. (Order, Part III.B.1, p.7.) Other than simply rehashing the same arguments raised previously -- explaining how state law would supposedly apply -- the FDIC made no attempt to explain why federal law should not apply. On this record, reconsideration would ordinarily be denied. While this motion was under submission, however, the United States Supreme Court issued a ruling that could cast doubt on the viability of the previous First Circuit holdings. The choice of law issue here, however, remains far from clear.

7

In O'Melveny & Myers v. FDIC, ____ U.S. ____, 62 U.S.L.W. 4487 (Jun. 13, 1994) (No. 93-489), the Supreme Court ruled that where the FDIC is suing on a substantive right of action that comes from state law -- there, a tort claim -- the rules regarding imputed knowledge would be governed by state law as well. While acknowledging prior holdings that federal law governed the rights of federal agencies, United States v. Kimbell Foods, Inc., 440 U.S. 715, 726 (1979), the Court distinguished that "the FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its own rights rather than, as receiver, the rights of [the failed bank]." O'Melveny & Myers, 62 U.S.L.W. at 4489 (emphasis original).

Having questioned the applicability of federal law as well as the authority of federal courts to craft rules of federal common law, the Court went on to further note that "[w]hat is fatal to [the FDIC's] position in the present case is that it has identified no significant conflict with an identifiable federal policy or interest." O'Melveny & Myers, 62 U.S.L.W. at 4490.

While the FDIC here is also acting in its capacity as a receiver, the Supreme Court and the many circuit courts of appeal have frequently cited the impelling need of federal banking regulators to be able to quickly and accurately ascertain the continuing solvency of a federally-insured bank. E.g. Langley v. FDIC, 484 U.S. 86, 91 (1987). The need for "uniformity" is far stronger here than in O'Melveny & Myers.

Whether these policy concerns are sufficiently weighty to authorize a federal rule in situations such as this need not be resolved since the Court's initial ruling is entirely consistent

with state law.

B.   Under State Law, the Representative Capacity of the ___
Signers is also a Triable Issue of Fact

After reciting the standards generally governing summary judgment regarding the interpretation of a contract, the Court explained that the promissory note was itself internally contradictory as to whether the signatures were intended to be given in their personal or representative capacities and that documents in the loan package (and the absence of personal loan applications combined with the presence of corporate loan applications) should have alerted the FDIC to potential defenses raised here.  The FDIC now asserts that the capacity question must be resolved by reference to state law.  As alluded to above, however, state law is almost entirely in accord.  First, the FDIC asserts that under New Hampshire law, the meaning of a contract must be determined by the court as a matter of law.  This is incorrect.  Rather, New Hampshire law is in accord with the standards set out in the Order.  As recently explained by the New Hampshire Supreme Court,

> "While the interpretation of a contract is generally a question of law for the court, when there is a disputed question of fact as to the terms of a contract, it is to be resolved by the trier of fact."

Great Lakes Aircraft Co. v. Claremont, 135 N.H. 270, 286-87, 608 A.2d 840, 851-52 (1992), quoting Peabody v. Wentzell. 123 N.H. 416, 418, 462 A.2d 105, 107 (1982).  Accord Campo v. Maloney, 122 N.H. 162, 168, 442 A.2d 997, 1001 (1982). Compare FDIC v. Singh, 977 F.2d 18, 22 (1st Cir. 1992).

The FDIC implies, however, that the standard for determining representative capacity is resolved differently.  The FDIC relies heavily on K-Ross Bldg. Supply Ctr. v. Winnipesaukee Chalets, 121 N.H. 575, 432 A.2d 8 (1981).  The rule of K-Ross, however, is

9

only that the representative capacity in which a note is signed should be determined based upon the commercial paper itself. Id., 121 N.H. at 578, 432 A.2d at 10. That is exactly what the Court held was required under D'Oench, Duhme. (Order, Part III.A., PP.5-7.)

In contrast to the instant case, in K-Ross the New Hampshire Supreme Court found significant that "there is nothing on the face of the instrument to indicate that it represented anything other than the defendant's personal obligation." Id., 121 N.H. at 578, 432 A.2d at 10. In a suit over a dishonored check which did not contain any customer identification on it, the court noted that the unadorned check "indicated [1] neither the principal's name nor [2] nor the fact that the defendant was signing in a representative capacity." K-Ross, 121 N.H. at 579, 432 A.2d at 11. Absent any indicia of representative capacity, the court found that personal liability was established as a matter of law. Thus, the holding of K-Ross was not that capacity is always question of law. Rather, the court held no more than that the issue of personal capacity was established as a matter of law under the facts of that case.

In this case, however, applying nearly identical standards, the Court has already ruled that the loan documents here are themselves ambiguous and internally inconsistent as to whether Fennell and O'Flahaven were signing simply as corporate agents of Teksource or whether they were taking out the loan in their own names. (Order, Part III.B.2, p.8-10.) Other than arguing that the standards are different -- which they are not -- the FDIC provides no basis for reconsideration. The Court has already

10

considered the evidence suggesting personal capacity and held that it did not establish personal liability as a matter of law. Reconsideration is not a vehicle for rehashing the same argument.

## IV. Conclusion

There is no basis for reconsidering the Court's ruling that the failure of consideration defense based on alleged non-disbursal of the loan is not barred by D'Oench, Duhme. The Court has reviewed the Gaffney affidavit which was contained in the pleadings filed upon removal. Having overlooked this document in connection with reviewing the initial motion, reconsideration has been granted. Because the declaration gives rise only to a factual conflict, the underlying motion will remain denied.

Whether tested under federal or state law, the documents comprising the loan package are genuinely ambiguous as to whether Defendants O'Flahaven and Fennell signed as corporate agents of Teksource or in their personal capacities.

The motion for reconsideration is DENIED.

SO ORDERED.

_____
ROBERT J. KELLEHER,
United States District Judge

DATED:   July 11 , 1994


cc:   John C. La Liberte
      Thomas H. Richards
      Janine Gawryl

11