Belknap
No. 82-204

DWIGHT PEABODY

v.

RAYMOND A. WENTZELL d/b/a
FOURNIER LUMBER CO. & a.

June 15, 1983

*Wescott, Millham & Dyer*, of Laconia (*Gary P. Westergren* on the brief and orally), for the plaintiff.

*Nighswander, Martin, KillKelley & Kidder, P.A.*, of Laconia (*David L. Harrigan* and *Walter L. Mitchell* on the brief, and *Mr. Harrigan* orally), for Carl E. Kelton, Intervenor.

*Law Offices of Harry V. Spanos*, of Newport (*Gerald J. Carney* on the brief and orally), for Sugar River Savings Bank, Intervenor.

KING, C.J. The plaintiff, Dwight Peabody, appeals a Master's (*Mayland H. Morse, Jr.*, Esq.) ruling, which was approved by the Superior Court (*DiClerico*, J.), that his mechanic's lien against certain property failed because he did not secure an attachment in a timely manner. We affirm.

The defendant, Raymond A. Wentzell, operated a sawmill on a parcel of land in Belmont. The plaintiff was the manager of the mill and continued to be so employed until the mill was destroyed by fire in May 1979. He was paid a salary by the defendant. After the fire, the defendant and plaintiff went to Michigan to inspect a mill, in the hope of reconstructing the mill on the defendant's property. After deciding that the Michigan mill was acceptable, the plaintiff and defendant agreed that the plaintiff would disassemble the mill in Michigan, transport it to New Hampshire, and install it on the Belmont site. The plaintiff stated that he would perform the reconstruction for between $60,000 and $70,000. There was no written contract.

The plaintiff returned to Michigan to disassemble the mill. He also made arrangements to have the mill site cleared and anything of value salvaged. The disassembled mill was delivered to New Hampshire in early June. For the next three or four months, the plaintiff and a crew of workmen that he hired began to reconstruct the mill.

The plaintiff did not simply reassemble the mill in the form in which it had existed in Michigan. Instead, the plaintiff made significant modifications, converting the eight-foot Michigan sawmill into a sixteen-foot sawmill and changing the configuration from a circular configuration to that of a straight-line.

The mill became operational in late September 1979. On September 24, 1979, the plaintiff submitted a final bill in the amount of $65,612 to the defendant for his services and expenditures. By the end of September, the plaintiff was again working at the mill and paid a salary by the defendant. In late November 1979, the defendant gave the plaintiff a promissory note for the same amount as was contained in the plaintiff's bill. Between late September and late January the plaintiff performed some additional work on the mill, including work on the walls of the building.

On March 21, 1980, the plaintiff filed a writ seeking to secure his mechanic's lien by attachment. While the defendant did not contest the validity of the plaintiff's claim, three intervenors who had various claims against the defendant's property did so. The intervenors stipulated prior to trial as to the respective priorities of their claims.

The case was referred to a master. The main issue before him was whether the plaintiff had secured his lien within the time required by RSA chapter 447. RSA 447:9 provides that a mechanics lien created by RSA 447:2 shall continue for ninety days after the services are performed, and RSA 447:10 provides that such a lien may be secured by attachment *while* the lien continues.

The master held that the plaintiff performed the contract as an independent contractor, not as an employee. He determined that the plaintiff completed the contract by late September, 1979, and that the plaintiff's mechanic's lien expired ninety days later, prior to the time of the plaintiff's attachment on March 21, 1980. Specifically, the master found that certain work performed by the plaintiff after September, 1979, was not part of the parties' contract. The master noted that the statutory period for securing a lien began to run from the completion of the contract work. He determined that the work on the mill walls was "incidental" in comparison to the job of reconstructing the mill. He also found that this work was done after the plaintiff had returned to his role as mill manager.

Alternatively, the master found that even if the work was not done by the plaintiff in his role as mill manager, the work at best constituted work under a second, separable contract which did not extend the statutory time applicable to work performed under the parties' original contract. Accordingly, he dismissed the plaintiff's mechanic's lien claim and the plaintiff appealed.

The plaintiff first challenges the master's finding that the work performed after late September, 1979, including the work on the mill walls, was not within the contemplation of the parties when they made their contract to reconstruct the mill. He also challenges the master's finding that the work he performed after September, 1979, was inconsequential, gratuitous or done merely to remedy defects.

While the interpretation of a contract is generally a question of law for the court, *Baker v. McCarthy,* 122 N.H. 171, 174–75, 443 A.2d 138, 140 (1982), when there is a disputed question of fact as to the terms of a contract, it is to be resolved by the trier of fact. We recently stated: "A contract may be established by spoken or written words or by acts or conduct and where there is a disputed question of fact as to the existence and terms of a contract it is to be deter-

mined by the trier of facts. . . ." *Harrison v. Watson*, 116 N.H. 510, 511, 363 A.2d 204, 205 (1976). When such findings are supported by the evidence, we will uphold them. *Estlow v. N.H. Sweepstakes Comm'n*, 122 N.H. 719, 720, 449 A.2d 1212, 1213 (1980). The master concluded that the conduct of the parties indicated that both the plaintiff and the defendant believed that the contract for mill reconstruction was completed when the plaintiff presented his bill to the defendant in late September. He noted that no further bills were presented, and that neither the plaintiff's bill nor the note given by the defendant in late November reflected any suggestion that the contract was incomplete. He stated that the defendant accepted the plaintiff's performance when he resumed production at the mill and when the plaintiff resumed his role of mill manager.

The master could rely on the parties' conduct to show what the parties actually intended. *Auclair v. Bancroft*, 121 N.H. 393, 395, 430 A.2d 169, 171 (1981). While both the plaintiff and defendant testified that the work on the mill walls was within their contemplation, the master was not required to accept this testimony, *Roy v. Perrin*, 122 N.H. 88, 95, 441 A.2d 1151, 1155 (1982), and could rely on their conduct instead. In this case, there was sufficient evidence to support the master's finding that the work at issue was not included in the parties' contract.

We need not determine whether the work performed by the plaintiff after September, 1979, was inconsequential, gratuitous or done merely to remedy defects, because there was sufficient evidence to support the master's finding that the work at issue was not included in the parties' contract. Consequently, it was immaterial whether the work was inconsequential, gratuitous, or done merely to remedy defects. The statutory period for securing the mechanic's lien for work performed pursuant to the parties' contract began to run from the completion of the contract in late September, 1979, and expired prior to March 21, 1980, when the plaintiff filed his writ.

*Affirmed.*

DOUGLAS, J., did not sit; the others concurred.