FEDERAL DEPOSIT INS. CORP., as
Liquidating Agent for Hillsborough
Bank and Trust Co.

v.

Kathleen O'FLAHAVEN, et al.

Civ. No. 91–433–B.

United States District Court,
D. New Hampshire.

April 8, 1994.

Order on Reconsideration July 11, 1994.

John C. LaLiberte, Sherin & Lodgen, Boston, MA, for F.D.I.C.

Janine Gawryl, Richards, Gawryl & MacAllister, Nashua, NH, for Kathleen E. O'Flahaven.

Thomas H. Richards, Sheehan, Phinney, Bass & Green, P.A., Grenville Clark, III, Gray, Wendell & Clark, Manchester, NH, for Percy L. Fennell.

Deaver Brown, pro se.

### ORDER

KELLEHER, District Judge.

Teksource, Inc., a Massachusetts corporation, borrowed $400,000 from Hillsborough Bank and Trust. Defendants Kathleen O'Flahaven, Teksource's President, and Percy Fennell, Chair of Teksource's Board of Directors, signed the loan papers. Hillsborough Bank was declared insolvent and its assets assumed by the Federal Deposit Insurance Corporation (FDIC). Teksource is also insolvent and has failed to pay its loan from Hillsborough. Asserting that O'Flahaven and Fennell signed the loan in their individual capacities and not simply as corporate agents, the FDIC brought this action against O'Flahaven and Fennell to collect the Teksource loan.

Primarily relying on 12 U.S.C. § 1823(e) and the doctrine established in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the FDIC moves for summary judgment asserting that the defendants are prima facie liable and that their defenses are insufficient as a matter of state and federal law. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

### I. Overview of *D'Oench, Duhme* and 12 U.S.C. § 1823(e)

The doctrine established by *D'Oench, Duhme* is deceptively simple to repeat—it bars defenses based on "arrangement[s]

whereby the banking authority ... was or was likely to be misled." *In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1344 (1st Cir.1992), quoting *D'Oench, Duhme*, 315 U.S. at 460, 62 S.Ct. at 680. Congressional codification of this common law doctrine, 12 U.S.C. § 1823(e), requires that certain agreements with a federally insured bank meet specific conditions in order to be enforceable against the FDIC. Here, however, the parties do not so much dispute what *D'Oench, Duhme* and § 1823(e)[1] say as much as they question whether they properly apply.

Although *D'Oench, Duhme* and § 1823(e) have been widely elaborated upon in First Circuit opinions, their application has not been definitively resolved as to some of the defenses raised here. Yet the general boundaries in which the doctrines apply seems clear: they bar claims or defenses based upon matters outside the bank's official records that would render the note voidable, but not void. An implicit corollary is that defenses based on matters that are part of the bank's records, *FDIC v. Bracero & Rivera, Inc.*, 895 F.2d 824, 827–30 (1st Cir. 1990), *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1246 (6th Cir.1989), or defenses that would render the asset void *ab initio*, such as fraud in the factum, *Langley v. FDIC*, 484 U.S. 86, 91–94, 108 S.Ct. 396, 400–02, 98 L.Ed.2d 340 (1987), *In re 604 Columbus Ave. Realty Trust*, 968 F.2d at 1346, are not precluded by *D'Oench, Duhme* or § 1823(e).

### II. The Evidence Relevant to the Motion and Opposition

A major defect with the instant motion is the dearth of evidence submitted by either side. "The moving party invariably bears both the initial and the ultimate burden of demonstrating its legal entitlement to summary judgment." *Lopez v. Corporacion Azucarera de Puerto Rico*, 938 F.2d 1510,

---

1. The First Circuit treats § 1823(e) and *D'Oench, Duhme* as essentially coextensive. *FDIC v. Longley I Realty Trust*, 988 F.2d 270, 273 (1st Cir. 1993). *See also In re 604 Columbus Ave. Realty Trust*, 968 F.2d 1332, 1346 (1st Cir.1992). *Cf. Bateman v. FDIC*, 970 F.2d 924, 927 (1st Cir.

1992) ("the statute and the *D'Oench, Duhme* federal common law are not necessarily coextensive"), *Beener v. LaSala*, 813 F.Supp. 303, 307 n. 3 (D.N.J.1993) (*D'Oench, Duhme* is only a rule of equitable estoppel whereas § 1823(e) applies only to "agreements").

1516 (1st Cir.1991). For issues where the moving party will not bear the burden of proof at trial, the Supreme Court somewhat relaxed the moving party's burden in initially supporting its summary judgment motion—it need only identify an element of the opposing party's case that it claims is unsupported by any evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ This relaxed standard for moving parties under *Celotex,* however, only applies to issues on which the moving party will not bear the burden of proof at trial. *Lopez,* 938 F.2d at 1516–17, *Penelope v. Brown,* 792 F.Supp. 132, 136 n. 5 (D.Mass.1992). Where a party will ultimately bear the burden of proof at trial, to prevail on summary judgment, that party must discharge its burden to establish the sufficiency of its claims— including providing evidentiary support. *Lopez,* 938 F.2d at 1516–17, *Penelope,* 792 F.Supp. at 136 n. 5.

■ To defeat summary judgment, the opposing party—at least on issues where it will bear the burden of proof at trial—"must present definite, competent evidence to rebut the motion." *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993). In other words, the opposing party must present "enough competent evidence to enable a finding [at trial] favorable to the nonmoving party." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 842 (1st Cir.1993). Implicit in these requirements is that the evidence must, at a minimum, be provided to the Court.

■ Here, both sides attempt to rely upon affidavits filed in proceedings that took place before the state court but are not part of this Court's files. The Court cannot simply take judicial notice of these affidavits because, in the first place, they are not even provided to the Court. *Cf. E.I. DuPont de Nemours & Co. v. Cullen,* 791 F.2d 5, 7 (1st Cir.1986), *In re Delmarva Sec. Litig.,* 794 F.Supp. 1293, 1299 (D.Del.1992) (judicial notice of public records permissible "if they are provided to the Court by the party seeking to have them considered"). Furthermore, even if judicial notice were justified, its scope is far more limited that the parties appear to appreciate.

The Court could not judicially notice the veracity of the allegations in the affidavits; it could only take notice that the affidavits were in fact filed and that the factual averments were in fact made. *E.I. DuPont,* 791 F.2d at 7, *Liberty Mut. Ins. Co. v. Rotches Pork Packers,* 969 F.2d 1384, 1388–89 (2d Cir.1992) (judicial notice is "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"). This, however, is no substitute for an affidavit filed in this proceeding setting forth specific allegations in connection with the instant federal case and the instant motion.

Similarly, Fennell's blanket verification of his attorneys' memorandum of law is also insufficient as it "is in no way the evidentiary affidavit called for in the rule." *FDIC v. Roldan Fonseca,* 795 F.2d 1102, 1106 (1st Cir.1986). *See also Lopez,* 938 F.2d at 1515 & n. 11.

Thus, although the FDIC may have satisfied its initial burden as to summary adjudication of some of the defendants' defenses, in order to establish its entitlement to judgment, the FDIC could not simply rely on the relaxed standard of *Celotex* but was obliged to provide evidence supporting its underlying claims.

Fortunately, the lack of particularized affidavits by either side is not an insurmountable obstacle. As explained below, *D'Oench, Duhme* and 12 U.S.C. § 1823(e) essentially require that most of the issues raised in this motion be determined based on the documents comprising the loan package. Thus, much of the extrinsic evidence proffered by defendants would be irrelevant even if contained in an affidavit. As to the proposed fraud defenses, the absence of specific evidence is again not fatal because, even if treated as an offer of proof, since they do not transcend simple fraud in the inducement, the proposed defenses remain insufficient as a matter of law. Ultimately, however, since the FDIC has failed to provide proof that the loan was actually disbursed—as compared to the bank's promises contained in the loan contract itself—it has failed to establish entitlement to summary judgment.

### III. *D'Oench, Duhme* Precludes Defenses Relating to the Capacity in Which the Notes were Signed Only to the Extent the Defenses Are Based on Evidence Outside of the Bank's Official Records

#### A. *The Capacity Problem*

■ Although not definitively resolved, the First Circuit has suggested that questions of representative/individual capacity may well be outside the scope of *D'Oench, Duhme* and § 1823(e). *FDIC v. Caporale,* 931 F.2d 1, 3 (1st Cir.1991), *FDIC v. Rivera–Arroyo,* 907 F.2d 1233, 1235 (1st Cir.1990). "Neither the *D'Oench* doctrine nor § 1823(e) bars the assertion of a claim or defense that does not depend on an agreement." *RTC v. Carr,* 13 F.3d 425, 429 (1st Cir.1993). Thus, depending upon the evidence used to prove the capacity in which the signature was given, this would be entirely consistent with the purposes and rules laid forth in *D'Oench, Duhme* and § 1823(e).

For example, the FDIC could not legitimately claim to be hindered in evaluating a bank's solvency when the notes unequivocally identify the borrower as the corporate entity and where the signatures unequivocally indicate that persons have signed only in their representative capacities. This determination would not be based on any side agreement and, thus, would not be precluded under *D'Oench, Duhme. Carr,* 13 F.3d at 429. On the other hand, allowing borrowers to introduce parol evidence to show that a facially unequivocal signature in one's individual capacity was actually subject to a bank officer's interpretation that it was a corporate signature would be as inconsistent with *D'Oench, Duhme* and § 1823(e) as giving effect to a side agreement with the bank that the personal note would only be collected through the corporate entity. This exclusion of parol evidence is reinforced by *D'Oench, Duhme*'s policy "favor[ing] the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements, over the interests of borrowers, who can." *Timberland Design v. First Serv. Bank for Savings,* 932 F.2d 46, 48 (1st Cir. 1991).

Here, Fennell and O'Flahaven support their capacity defenses with a combination of both types of evidence—i.e., the promissory note and the related loan records as well as extrinsic evidence. The latter type of evidence, "not visible to FDIC officials on the face of the documents to which they must refer in determining the value of assets they have acquired, should not, under the *D'Oench, Duhme* rationale," be considered in determining the capacity in which the signatures were given. *FDIC v. Singh,* 977 F.2d 18, 24 (1st Cir.1992).

#### B. *The Capacity in Which the Notes were Signed is a Question of Fact To Be Resolved Under Federal Law*

##### 1. *Personal or corporate capacity should be resolved under federal, not state, law*

■ The parties focus on state law as the authoritative source for determining whether O'Flahaven or Fennell rendered themselves personally liable on the note at issue. While this may have been appropriate when the dispute was between the bank and the defendants, with the presence of federal regulators comes the application of federal law as well. 12 U.S.C. § 1819. *See Roldan Fonseca,* 795 F.2d at 1106 ("Federal law governs cases where ... the FDIC ... sues to collect assets acquired from the receiver of an insured bank."). *Accord FDIC v. Municipality of Ponce,* 904 F.2d 740, 745 (1st Cir.1990), *FDIC v. P.L.M. Int'l,* 834 F.2d 248, 252 (1st Cir.1987), *Santoni v. FDIC,* 677 F.2d 174, 177–78 (1st Cir.1982). *Cf. Rivera–Arroyo,* 907 F.2d at 1235 (determining signatory capacity according to state law without considering applicability of federal law).

The application of federal law is also supported by the sound policy of enabling the federal courts to ensure that the FDIC and federal regulators are adequately protected and not subjected to the variegated requirements in each of the different states. The federal courts may find state law useful in expounding upon the contours of the federal defense. But, "in the last analysis its decision turns upon the law of the United States, not that of any state." *Santoni,* 677 F.2d at 178, quoting *D'Oench, Duhme,* 315 U.S. at

471, 62 S.Ct. at 686 (Jackson, J., concurring). Federal oversight was the policy giving rise to the rule of *D'Oench, Duhme;* it is equally applicable to resolving the enforceability of the notes themselves.

2. *Fennell and O'Flahaven's signatory capacities are factual questions inappropriate for resolution by summary judgment in this case*

■ "[A] dispute over the meaning of a contract is often a dispute about a material fact." *Singh,* 977 F.2d at 21. On the other hand, "[i]n some circumstances, 'the words of a contract may be so clear themselves that reasonable people could not differ over their meaning.'" *Id.* The court went on to explain:

> The question of whether a contract is ambiguous is one of law for the judge. A contract is not ambiguous simply because litigants disagree about its proper interpretation. Rather, a contract, or a set of documents which in the ensemble comprise a contract, is considered ambiguous only when the language "is reasonably prone to different interpretations." Stated another way, "contract language which is susceptible to differing, but nonetheless plausible, constructions ... is ambiguous."

*Singh,* 977 F.2d at 22 (citations omitted).

■ Here, the capacity in which Fennell and O'Flahaven signed the notes is subject to genuine debate; in other words, it is sufficiently ambiguous to have put the FDIC on notice through the bank's records that the asset is not unquestionably enforceable against Fennell and O'Flahaven. On the one hand, supporting the FDIC, is the fact that O'Flahaven and Fennell signed the promissory note without any clear indication that they were doing so only in a representative capacity. On the other hand, while Fennell and O'Flahaven were identified as the "maker" of the note, O'Flahaven's address was tied to the business, Teksource, and the note provided that the funds were "to be used to refinance existing notes of each of the Makers, and to provide additional new funds" and that the funds were limited to "business purposes", and not allowed for "personal, family, or household use." Additionally, the promissory note included a provision indicating that the note would be in default if Teksource defaulted on any of its other loans with Hillsborough.[2] These facts are not, of course, inconsistent with the entrepreneurs guarantying payment by their business venture, but when combined with the fact that the bank's records did not include or require loan applications or personal financial statements from either Fennell or O'Flahaven and relied solely on Teksource's finances,[3] a regulator's likely conclusion was either that the loan was being extended to the business itself or that the bank was extremely reckless in verifying creditworthiness.

Considering the entire package of loan documents—particularly the lack of a loan application or personal financial statement from either individual—it is equally plausible that O'Flahaven and Fennell took out a loan in their corporate capacities on behalf of Teksource as is the possibility that O'Flahaven and Fennell offered their own personal resources in guaranty of a loan to Teksource. Because the contract is ambiguous as to Fennell's and O'Flahaven's signatory capacity and because this ambiguity gives rise to a question of fact, summary adjudication of the capacity issue is DENIED.

---

2. Counterbalancing this, the definition of default was contained in two consecutive paragraphs. The first paragraph referred to the "Makers'" obligation to pay upon the instant note; the second referred to any default in any other loan between Teksource and the bank. Although the FDIC overlooks the point, the use of different terms in the two consecutive paragraphs should not be dismissed as insignificant. .

3. The import of the absence of these documents from the loan package is reinforced by both Fennell's explanation that, when asked, he refused to provide a financial statement explaining that the loan was extended to the corporation only. O'Flahaven, on the other hand, suggests that she was never asked for a personal financial statement. Constituting only extrinsic evidence, these statements of course cannot be the basis for any ruling on the capacity issue. The statements attributed to Hillsborough and Teksource officials are similarly excluded.

Unless reduced to a judgment on the merits, evidence of efforts to enforce the loan against Teksource are also extrinsic and, therefore, not relevant in light of *D'Oench, Duhme.*

## IV. The Asserted Fraud Defenses Are Barred by *D'Oench, Duhme*

O'Flahaven and Fennell both contend bank officers and other Teksource agents made various misrepresentations that rendered the note void. None of these, however, amount to anything beyond ·fraud in the inducement—a defense which has been expressly abrogated by the Supreme Court. *Langley*, 484 U.S. at 94, 108 S.Ct. at 402.

### A. The Alleged Deception Regarding Capacity

The essential test of "fraud in the factum" as described by the Supreme Court is whether the party being charged was "without knowledge of [the document's] true nature or contents." *Langley*, 484 U.S. at 93, 108 S.Ct. at 402. In holding that fraud in the factum would be a valid defense notwithstanding *D'Oench, Duhme*, the Supreme Court relied in part on the U.C.C. section regarding the rights of a holder in due course. *Langley*, 484 U.S. at 93, 108 S.Ct. at 402, citing U.C.C. § 3–305(2)(c). *See also Caporale*, 931 F.2d at 2 n. 1. Section 3–305(2)(c) permits as a defense against a holder in due course, a claim of misrepresentation that

induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.

U.C.C. § 3–305(2)(c).[4]

That this type of fraud might extend to misrepresentations as to the capacity in which the loan is executed is supported by both the Official Comment and *Caporale*. The Official Comment notes that "[u]nder this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms." U.C.C. § 3–305, Comment 7. Whether one is signing a note in one's personal capacity or solely as the agent of a principal is surely an "essential term." Deception regarding one's responsibility to pay the note is not simply a dispute as to the "underlying terms" of the note, but "the basic nature of the obligation ... assumed by entering the loan agreement." *In re 604 Columbus Ave. Realty Trust*, 968 F.2d at 1347. This is borne out by the *Caporale* panel's unwillingness to summarily dismiss a capacity claim as insufficient as a matter of law under *D'Oench, Duhme*, but to focus instead on whether the defense was properly raised and evidentially established. *Caporale*, 931 F.2d at 3.

As explained by the Official Comment, cited to by *Langley:*

The test of the defense ... is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge.

U.C.C. § 3–305, Comment 7.

The commentary goes on to explain that:

In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the intelligence, education, business experience, and ability to read or understand English of the signer. Also relevant is the nature of the representations that were made, whether the signer had good reason to rely on the representations or to have confidence in the person making them, the presence or absence of any third person who might read or explain the instrument to the signer, or any other possibility of obtaining independent information, and the apparent necessity, or lack of it, for acting without delay. Unless the misrepresentation meets this test, the defense is cut off . . .

U.C.C. § 3–305, Comment 7 (1992).

Virtually all of these factors decisively favor the FDIC. The most significant allega-

---

4. Although, as discussed earlier, the issue presented is a matter of federal law, it is noteworthy that New Hampshire has adopted this statute verbatim. N.H.Rev.Stat.Ann. § 382–A:3–305.

It is also noteworthy that when the U.C.C. section was recently amended, those amendments were also adopted in New Hampshire— verbatim. U.C.C. § 3–305(a)(1) (1992), N.H.Laws ch. 346, § 1 (1993). The revisions are ultimately irrelevant since the changes are merely cosmetic—as reinforced by the fact that the relevant portion of the Official Comment remains unchanged. Ultimately, however, which version of the section and comment to apply is not dispositive since this issue remains a question of federal common, not state statutory, law.

tions are that Fennell and O'Flahaven relied on bank officer's statements that the documents were prepared as corporate loans. Fennell and O'Flahaven, however, were both capable of reading the documents and concluding that, at best, the representative capacity of the signators was ambiguous. Fennell and O'Flahaven both describe themselves as intelligent, educated individuals with significant business experience—albeit ones who were duped. Thus, the real claim is not that they did not know what language was used in the contract,[5] but rather that they were deceived as to the legal effect of the language. The circumstances were plainly such that independent legal counsel was available and would reasonably be consulted; this was not an ordinary consumer transaction. Nothing precluded them from seeking independent legal advice. Their failure to read the documents or seek legal counsel should not be allowed to interfere with the rights of the FDIC.

## B. *Fennell's Fraud Claims*

█ Fennell claims he was fraudulently induced to invest in Teksource by representations from both Teksource officials and bank officials as to outstanding contracts and receivables. These alleged misrepresentations, however, have nothing to do with the loan itself and are not chargeable against the FDIC.

As to the note at issue, he claims he was sent only the signature page which was represented to be part of a proposed buy-out of Teksource by a number of other companies. Fennell asserts he was not provided with a complete copy of the promissory note currently being sued upon. This, however, was a error which, as against the FDIC, Fennell must bear the risk of loss. Irrespective of Fennell's good faith or lack of intent to deceive banking authorities, by signing a note which he had not reviewed, he "lent [himself] to a scheme that could mislead bank examiners." *Caporale*, 931 F.2d at 2. Fennell had the right, power, and ability to demand a copy of the complete note to review before signing it. His failure to do so created the obvious risk that the note was not drafted as

he believed it would be. Fennell could have—and under *D'Oench, Duhme* should have—reviewed the entire note before signing it.

Finally, Fennell's claims regarding the guaranty by Deaver Brown are irrelevant to Fennell's own liability. At most, Fennell may have identified an additional party against whom the loan might be collectable. To survive *D'Oench, Duhme*, the error must be such as to have rendered the original note void. The supposed negligent cancellation of a guaranty does not in any way detract from the validity of the note or Fennell's personal liability if he signed the note in his personal capacity.

## C. *O'Flahaven's Fraud Claims*

O'Flahaven raises claims similar to Fennell's attempting to explain how she was supposedly cozened into signing the note. Ultimately, however, like Fennell's claims, they are without merit as against the FDIC under *D'Oench, Duhme*. Like Fennell, O'Flahaven claims she was misled by others as to Teksource's financial viability and, relying on those misrepresentations, agreed to join Teksource. As with Fennell, these are not matters that were part of the loan package and, at best, only tangentially related to the loan itself. As against the FDIC, these facts cannot constitute a defense and are irrelevant.

As with Fennell's analogous argument, O'Flahaven's assertion that she was defrauded because the terms of the note were filled in after she signed it is an invalid defense under *D'Oench, Duhme. Caporale*, 931 F.2d at 2.

█ O'Flahaven also suggests that the note was not "facially unencumbered"—and was therefore exempt from *D'Oench, Duhme* —because litigation between O'Flahaven and the bank had been ongoing for approximately 10 months before the FDIC closed the bank and acquired the note. The short answer to this is that *Langley* flatly rejected the argument that a pending lawsuit

---

**5.** *See infra* regarding Fennell's and O'Flahaven's claims that they signed blank documents.

raising certain defenses would affect the viability of those defenses under § 1823(e).[6] O'Flahaven has made no attempt to distinguish *Langley.* Thus, irrespective of the FDIC's knowledge under a *D'Oench, Duhme* analysis,[7] these claims are barred under § 1823(e). *Langley,* 484 U.S. at 94–96, 108 S.Ct. at 402–03.

## V. The Loan Agreement is Supported by Consideration, However, *D'Oench, Duhme* Does Not Bar the Failure of Consideration Defense That the FDIC has Failed to Rebut

### A. *The Loan Contract is Supported by Consideration*

 Consideration does not require that each side receive a direct, personal benefit. It is basic hornbook law that consideration consists simply of any bargained-for benefit to the promisor or detriment to the promisee. 1 E. Allan Farnsworth, *Contracts,* §§ 2.3, 2.4 (2d ed. 1990), U.C.C. § 3–303(b). *See also Chasan v. Village Dist. of Eastman,* 128 N.H. 807, 816, 523 A.2d 16, 22 (1986), N.H.Rev.Stat.Ann. § 382–A:3–303(b). Even under O'Flahaven's interpretation of the loan contract,[8] in exchange for O'Flahaven's promise to repay the loan (whether in an individual or corporate capacity), Hillsborough Bank incurred the detriment of promising to extend a loan to Teksource.

The alleged defect identified by O'Flahaven is a supposed lack of consideration, not its failure. These arguments are so patently spurious that the defense is rejected on the merits, irrespective of *D'Oench, Duhme* or § 1823(e).

### B. *The Failure of Consideration Defense*

### 1. *The failure of consideration defense is not barred by* D'Oench, Duhme *or § 1823(e)*

 Failure of consideration, unlike lack of consideration, focuses upon the implementation of the contractual promises. The argument here about failure of consideration is that although Hillsborough *promised* to disburse the loan proceeds, in fact it never did disburse them and, thus, Fennell's and O'Flahaven's promises to repay the loans never matured. The FDIC argues that this defense is also barred by *D'Oench, Duhme* and § 1823(e).

Remembering that the focus of *D'Oench, Duhme* is on the ability of banking regulators to determine the value of assets and liabilities, it should be clear that a "failure of consideration" defense of the type presented here would not be barred by either *D'Oench, Duhme* or § 1823(e). In this case, whether the loan was in fact disbursed should be contained in the records of the bank. If the loan was disbursed, the failure of consideration defense is without merit. If the loan was not disbursed, there is no obligation under the loan contract for the FDIC to sue upon.

Since § 1823(e) bars only use of "agreements" to deflect liability for an asset, *Carr,* 13 F.3d at 429, this failure of consideration argument is not statutorily barred. Discharge of the loan's obligations to repay based on the absence of any disbursal does not require proof of a separate or secret "side agreement". Rather, the non-disbursement of the loan proceeds requires proof of nothing more than an historical fact—one that should be plainly evident in the bank's official records.

6. *Langley* explained that the harm to the FDIC is not simply in acquiring a note that was subject to an unknown defense. Rather, the harm began when the FDIC was unable to detect the defense from a review of the bank's records at the time the loan was entered into, thereby impairing the FDIC's ability to perform an accurate solvency determination at an earlier time. *Id.,* 484 U.S. at 95, 108 S.Ct. at 403.

7. Interpreting *D'Oench, Duhme,* several of the circuit courts have held that, since the doctrine is a form of equitable estoppel, proof of the FDIC's knowledge throughout the agreement's history would render *D'Oench, Duhme* inapplicable. *E.g. FDIC v. Gulf Life Ins. Co.,* 737 F.2d 1513, 1518 (11th Cir.1984). The First Circuit has not confronted this issue.

In any event, since the defense is barred by § 1823(e), the applicability of *D'Oench, Duhme* need not be resolved.

8. Fennell initially raised similar arguments, but retreated to the "failure of consideration" argument discussed below.

In closely analogous situations, the First and Sixth Circuits have explicitly held that proof of discharge through payment is not barred by *D'Oench, Duhme* or § 1823(e). *Bracero & Rivera*, 895 F.2d at 826, *Commerce Fed.*, 872 F.2d at 1246.

Although neither *Bracero & Rivera* nor *Commerce Federal* proffered much explanation for their rulings, they are fully consistent with both the language and purpose of *D'Oench, Duhme* and § 1823(e). Adducing evidence of payment does not give rise to the concerns that prompted *D'Oench, Duhme* or § 1823(e). Evidence of the face value of the note, as well as a record of any payments received on the note, should be plainly reflected in the bank's records. Thus, allowing evidence of payment—or non-disbursal *ab initio*—would not adversely affect the FDIC's ability to evaluate the solvency of financial institutions.

Further, to read *D'Oench, Duhme* as precluding proof that the loan was in fact paid or that funds were never in fact disbursed would unjustly enrich the FDIC and the failed bank's assets. Indeed, the FDIC makes no attempt to explain how its interpretation of *D'Oench, Duhme* would not preclude the FDIC from seeking to enforce a note perennially, each time asserting that *D'Oench, Duhme* precluded evidence of all prior payments. *D'Oench, Duhme* was intended to protect the FDIC and allow it to collect debts owed to failed lending institutions. If the loan was in fact paid or the funds never disbursed, no debt remains owing to the failed bank and thus, there is nothing for the FDIC to collect. This defense is not barred by either *D'Oench, Duhme* or § 1823(e).

*2. The FDIC has failed to rebut the allegations that the loan was never disbursed*

■ As noted above, the FDIC presented no affirmative evidence establishing its right to summary judgment. In the body of its memorandum of law, the FDIC declares its intention to rely upon allegations contained in an affidavit that was not filed with this Court. As a result, there is no direct evidence that the loan proceeds were ever disbursed. Furthermore, Fennell has directly charged [9] that the loan proceeds were never disbursed and that the FDIC has failed to produce in discovery any documentation to prove that the loan was in fact disbursed. The FDIC did not file a reply or submit any additional evidence.

Although proof of disbursement is not necessary in every loan sued upon, where the issue is raised, the burden should be placed squarely on the plaintiff to prove that it is seeking repayment for funds disbursed, not collection on a promise whose conditions have never matured. If the loan was disbursed, the FDIC should be able to adduce concrete evidence of this fact. If the loan was not disbursed, the best the prospective borrowers could do would simply be to assert that fact. Here, they have done so. The FDIC has not conclusively rebutted this fact. Summary adjudication of this defense will be denied.

## VI. Conclusion

All the proposed fraud defenses are based on representations not contained in the bank's records and, therefore, insufficient as a matter of law under *D'Oench, Duhme* and 12 U.S.C. § 1823(e). Irrespective of whether lack of consideration is a viable defense against the FDIC, consideration is manifestly present and this defense, too, is therefore insufficient as a matter of law. Summary adjudication of these claims is therefore GRANTED.

Neither *D'Oench, Duhme* nor 12 U.S.C. § 1823(e) preclude a defense of failure of consideration based on the bank's alleged failure to disburse the loan. In the face of defendants' assertion that the loan was not disbursed, the FDIC—which will have the burden of proof on this issue at trial—has failed to establish its right to judgment by

---

**9.** These allegations are raised only in the points and authorities since, following the FDIC's lead, Fennell also relies on an affidavit filed in state court and not submitted here—although Fennell took the extra step to "verify" the memorandum.

Since Fennell will not bear the burden of proof on this issue, however, his unsworn allegation is sufficient. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

failing to provide conclusive evidence that the loan was in fact disbursed. Therefore, summary adjudication of the failure of consideration defense is DENIED.

*D'Oench, Duhme* and 12 U.S.C. § 1823(e) bar the Court from considering extrinsic evidence in support of defendants' claims that they signed the notes solely in their capacities as officers of the borrowing corporation. Nonetheless, ambiguities in the loan papers themselves present a genuine issue of material fact as to whether Fennell and O'Flahaven could be held personally liable. Summary adjudication of the capacity claims is DENIED.

SO ORDERED.

## ORDER

Plaintiff Federal Deposit Insurance Corporation (FDIC) moves for reconsideration of this Court's order denying in part the FDIC's prior motion for summary judgment.

In sum, the Court has granted reconsideration on the basis of overlooked evidence, but found that it only gives rise to creating a factual issue for trial. Due to an intervening decision by the United States Supreme Court, the Court has reconsidered the applicability of federal law. Since the result would be the same under state law, however, the ruling stands firm. As more fully explained below, the motion is DENIED.

## I. Overview of Facts and Law

The relevant facts were set forth in this Court's prior order. In essence, this is an action by the FDIC to collect from Defendants Kathleen O'Flahaven and Percy Fennell on a promissory note for money allegedly lent by Hillsborough Bank and Trust to O'Flahaven, Fennell, and/or Teksource, Inc., the company for which they served as officers and directors.

It is difficult to succinctly state the rule of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and 12 U.S.C. § 1823(e) while staying true to the way these doctrines have been applied. Nonetheless, the guiding principles were identified in the prior order and neither party has argued that they were described inaccurately. (Order, Part I, pp. 2–3.)

In relevant part here, *D'Oench, Duhme* bars only claims or defenses based on matters outside the bank's official records. The implicit corollary being that defenses based on matters that are part of the bank's records are unaffected by *D'Oench, Duhme. FDIC v. Bracero & Rivera, Inc.,* 895 F.2d 824, 827–30 (1st Cir.1990), *Commerce Fed. Sav. Bank v. FDIC,* 872 F.2d 1240, 1246 (6th Cir.1989). Section 1823(e) applies only to "agreements".

## II. Reconsideration of the Failure of Consideration Defense

### A. The Legal Defense is Unaffected by D'Oench, Duhme

The defendants initially argued that the instant loan contract was not supported by consideration *as to them* because they were not entitled to personal use of the loan proceeds. This argument was summarily adjudicated as incorrect as a matter of law. (Order, Part V.A, pp. 15–16.) As a second tack, defendants argued that the loan contract was not enforceable since the loan proceeds were never disbursed *at all.* Fennell and O'Flahaven asserted that these facts supported a legal defense of failure of consideration.

The Court ruled that this type of defense was viable under *D'Oench, Duhme* since it did not rely on proving any type of agreement and the information would and should have been plainly available to federal regulators reviewing the bank's records. The Court further noted that the First Circuit (and, incidentally, the Sixth Circuit as well) had affirmed the viability of the analogous defense of discharge through payment in the context of FDIC enforcement and objections under *D'Oench, Duhme.* (Order, Part V.B.1, p. 17, citing *Bracero & Rivera,* 895 F.2d at 826, and *Commerce Fed.,* 872 F.2d at 1246.)

The FDIC does not directly address the First Circuit's relatively explicit holding in *Bracero & Rivera.* Nor does the FDIC address the analysis engaged in by the Court. Rather, the FDIC argues that a Fifth Circuit case holds to the contrary. In addition to ignoring the direct First Circuit authority,

however, the case it relies upon is unavailing as it conflicts with neither the First Circuit's ruling nor this Court's ruling on the summary judgment motion.

As noted in Fennell's opposition, *FDIC v. McClanahan,* 795 F.2d 512 (5th Cir.1986), did not involve a situation where the disbursement of the loan was in dispute. The *McClanahan* defendant argued that he had a defense because *he* did not receive the proceeds of the loan. The Fifth Circuit rejected this type of defense. The FDIC overlooks that this Court similarly rejected Fennell's and O'Flahaven's proposed defenses based solely on the grounds that *they* did not receive the proceeds.

The Fifth Circuit in *McClanahan* did not hold that there was no defense even though *no one* received the proceeds of the note— i.e., that the loan was never disbursed. Indeed, *McClanahan* recognized that

> *D'Oench, Duhme* has not been read to mean there can be no defenses at all to attempts by the FDIC to collect on promissory notes.... For example, ... where the note imposes bilateral obligations on the parties [such as a duty to disburse the loan and a corresponding duty to repay it], rather than creating a unilateral obligation by the maker to pay a sum certain, courts have held that the maker may defend himself by contending that the bank breached its obligations under the note.

*McClanahan,* 795 F.2d at 515 (citations omitted).

The FDIC falls prey to a tyranny of labels in arguing that other courts have rejected "consideration"-type defenses under *D'Oench, Duhme.* The FDIC, however, has failed to identify a single "consideration" defense that was rejected even though it did *not* require proof of evidence outside of the bank's official records. Whether Fennell's and O'Flahaven's arguments are referred to as a failure of consideration, a failure of a condition precedent, or an inability to prove damages, the ultimate point remains the same—it is fully consistent with *D'Oench, Duhme* to require proof that the loan was disbursed before authorizing collection for failure to repay since the amount disbursed and repaid would be contained in the bank's official records. (Order, Part V.B.1, pp. 17–18.) The FDIC has not identified a material misconstruction of the law nor even identified any holding to the contrary of this Court's ruling. Reconsideration of the legal basis is denied.

### B. The Court Has Reconsidered the Factual Basis For the Order

 Rather than provide declarations supporting its summary judgment motion, the FDIC relied upon declarations filed in prior state court proceedings that were buried in the documents filed with the notice of removal. Although the FDIC did not clarify that the declaration was located in the removal papers, the declaration was in fact there and, therefore, properly before the Court. The declaration was not considered because it was not located. Having located the declaration, the Court finds that reconsidering the factual basis for the ruling is appropriate.

### C. The "New Evidence" Does Not Conclusively Establish as a Matter of Law that the ·Loan was in fact Disbursed

Having determined that the defense based on non-disbursal was viable under *D'Oench, Duhme,* the Court went on to note that the FDIC had failed to rebut this defense by introducing any evidence. (Order, Part V.B.2, p. 18.) Pointing to the Gaffney affidavit filed in the state court action, the FDIC asserts that this is incorrect and seeks reconsideration.

The Gaffney affidavit does allege, albeit in conclusory terms, that the loan was completed—"Pursuant to the Note, the Bank loaned the defendants $400,000." (Gaffney Aff., ¶ 3.) The FDIC, however, presents no official bank records indicating that the loan was actually disbursed. In opposition to the instant motion, Fennell points out that in discovery he requested that the FDIC produce all documents reflecting the flow of the loan proceeds and that, to date, the FDIC has failed to provide any such documents. Fennell made this allegation in opposition to the

previous motion to dismiss and the FDIC has never attempted to rebut it.

Combining the FDIC's inability to provide any documentary evidence that the loan proceeds were disbursed with Fennell's assertion that they were not, the result is a genuine issue of material fact to be resolved at trial. Fennell's general denial might not have stood up against bank documents confirming the disbursal of the loan. But when tested against a generic, conclusory allegation that it was, Fennell's assertion is certainly sufficient to create a factual issue for trial.

### III. The Capacity Issues

O'Flahaven and Fennell contend that they signed the notes only in their capacity as representative corporate agents, not as personal signatories acting on their own behalves. They cited to contradictions and ambiguities within the promissory note itself and also referred to extrinsic evidence to support their contention. . The Court ruled that the extrinsic evidence was precluded by *D'Oench, Duhme* but that the promissory note itself was sufficiently ambiguous to preclude adjudication of the capacity issue as a matter of law. The Court ruled that because of the importance of federal oversight and the need for predictability by the FDIC, the question of capacity should be governed by federal law consistent with *D'Oench, Duhme.*

#### A. The Capacity Issue Might Arguably Be Governed by State Law

▉ The Court's Order cited a string of cases from the First Circuit all holding that federal law governed the enforceability of notes sued upon by the FDIC. (Order, Part III.B.1, p. 7.) Other than simply rehashing the same arguments raised previously—explaining how state law would supposedly apply—the FDIC made no attempt to explain why federal law should not apply. On this record, reconsideration would ordinarily be denied. While this motion was under submission, however, the United States Supreme Court issued a ruling that could cast doubt on the viability of the previous First Circuit holdings. The choice of law issue here, however, remains far from clear.

In *O'Melveny & Myers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), the Supreme Court ruled that where the FDIC is suing on a substantive right of action that comes from state law—there, a tort claim—the rules regarding imputed knowledge would be governed by state law as well. While acknowledging prior holdings that federal law governed the rights of federal agencies, *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979), the Court distinguished that "the FDIC is not the United States, and even if it were we would be begging the question to assume that it was asserting its *own* rights rather than, as receiver, the rights of [the failed bank]." *O'Melveny & Myers,* —— U.S. at ——, 114 S.Ct. at 2053 (emphasis original).

Having questioned the applicability of federal law as well as the authority of federal courts to craft rules of federal common law, the Court went on to further note that "[w]hat is fatal to [the FDIC's] position in the present case is that it has identified *no* significant conflict with an identifiable federal policy or interest." *O'Melveny & Myers,* —— U.S. at ——, 114 S.Ct. at 2055.

While the FDIC here is also acting in its capacity as a receiver, the Supreme Court and the many circuit courts of appeal have frequently cited the impelling need of federal banking regulators to be able to quickly and accurately ascertain the continuing solvency of a federally-insured bank. *E.g. Langley v. FDIC,* 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). The need for "uniformity" is far stronger here than in *O'Melveny & Myers.*

Whether these policy concerns are sufficiently weighty to authorize a federal rule in situations such as this need not be resolved since the Court's initial ruling is entirely consistent with state law.

#### B. Under State Law, the Representative Capacity of the Signers is also a Triable Issue of Fact

After reciting the standards generally governing summary judgment regarding the interpretation of a contract, the Court ex-

plained that the promissory note was itself internally contradictory as to whether the signatures were intended to be given in their personal or representative capacities and that documents in the loan package (and the absence of personal loan applications combined with the presence of corporate loan applications) should have alerted the FDIC to potential defenses raised here. The FDIC now asserts that the capacity question must be resolved by reference to state law. As alluded to above, however, state law is almost entirely in accord. First, the FDIC asserts that under New Hampshire law, the meaning of a contract must be determined by the court as a matter of law. This is incorrect. Rather, New Hampshire law is in accord with the standards set out in the Order. As recently explained by the New Hampshire Supreme Court,

> "While the interpretation of a contract is generally a question of law for the court, when there is a disputed question of fact as to the terms of a contract, it is to be resolved by the trier of fact."

*Great Lakes Aircraft Co. v. Claremont,* 135 N.H. 270, 286–87, 608 A.2d 840, 851–52 (1992), quoting *Peabody v. Wentzell,* 123 N.H. 416, 418, 462 A.2d 105, 107 (1983). Accord *Campo v. Maloney,* 122 N.H. 162, 168, 442 A.2d 997, 1001 (1982). *Compare FDIC v. Singh,* 977 F.2d 18, 22 (1st Cir. 1992).

The FDIC implies, however, that the standard for determining representative capacity is resolved differently. The FDIC relies heavily on *K–Ross Bldg. Supply Ctr. v. Winnipesaukee Chalets,* 121 N.H. 575, 432 A.2d 8 (1981). The rule of *K–Ross,* however, is only that the representative capacity in which a note is signed should be determined based upon the commercial paper itself. *Id.,* 121 N.H. at 578, 432 A.2d at 10. That is exactly what the Court held was required under *D'Oench, Duhme.* (Order, Part III.A., pp. 5–7.)

In contrast to the instant case, in *K–Ross* the New Hampshire Supreme Court found significant that "there is nothing on the face of the instrument to indicate that it represented anything other than the defendant's personal obligation." *Id.,* 121 N.H. at 578, 432 A.2d at 10. In a suit over a dishonored check which did not contain any customer identification on it, the court noted that the unadorned check "indicated [1] neither the principal's name nor [2] nor the fact that the defendant was signing in a representative capacity." *K–Ross,* 121 N.H. at 579, 432 A.2d at 11. Absent any indicia of representative capacity, the court found that personal liability was established as a matter of law. Thus, the holding of *K–Ross* was not that capacity is always question of law. Rather, the court held no more than that the issue of personal capacity was established as a matter of law under the facts of that case.

In this case, however, applying nearly identical standards, the Court has already ruled that the loan documents here are themselves ambiguous and internally inconsistent as to whether Fennell and O'Flahaven were signing simply as corporate agents of Teksource or whether they were taking out the loan in their own names. (Order, Part III. B.2, p. 8–10.) Other than arguing that the standards are different—which they are not—the FDIC provides no basis for reconsideration. The Court has already considered the evidence suggesting personal capacity and held that it did not establish personal liability as a matter of law. Reconsideration is not a vehicle for rehashing the same argument.

## IV. Conclusion

There is no basis for reconsidering the Court's ruling that the failure of consideration defense based on alleged non-disbursal of the loan is not barred by *D'Oench, Duhme.* The Court has reviewed the Gaffney affidavit which was contained in the pleadings filed upon removal. Having overlooked this document in connection with reviewing the initial motion, reconsideration has been granted. Because the declaration gives rise only to a factual conflict, the underlying motion will remain denied.

Whether tested under federal or state law, the documents comprising the loan package are genuinely ambiguous as to whether Defendants O'Flahaven and Fennell signed as corporate agents of Teksource or in their personal capacities.

The motion for reconsideration is DE-NIED.

SO ORDERED.